## HOCKING VALLEY RY CO v ORNSTEIN et

Ohio Probate Court, Franklin Co

No 60441.   Decided Feb 13, 1935

R. H. Nesbitt, Akron, for plaintiff in error. Smoyer, Kennedy, Smoyer & Vogel, Akron, for defendant in error.

**OPINION**

By McCLELLAND, J.

We have examined the records of a large number of cases on eminent domain and we have not found a single case in which the facts are at all similar to the facts in the case at bar. Almost all of the cases are cases in which the filing of the petition was, in a short time, followed by a submission to the court of the preliminary questions involving the right of the condemnor to condemn and also the finding of necessity. We have not discovered a single case in which the finding of necessity was not immediately followed by a trial to the jury. Neither have we found any case during the pendency of which a general financial depression has intervened. It is our opinion that any court confronted with the facts as they confront this court must, in the exercise of its jurisdiction, taken cognizance of those facts, and apply the law, as far as possible, in the light of those facts.

The petition in this case was filed in this court on the 17th day of December, 1929. The filing of the petition may not have been lis pendens as to this particular property, but immediately upon the filing of the same the owner of the property had some of his property rights interfered with. The condemnor, of course, did not take possession of the property. The owner remained in possession and control of same. He, however, could not freely sell the property when he wished, as he could have done prior to the filing of the petition, because the filing of the petition was a notice to the would that the property was subject to an appropriation proceeding. Neither could the owner freely lease his property because the filing of the petition was notice to any prospective lessee that the property might be taken by a condemnor for the purposes stated in the petition filed. Neither could the owner improve his property, because if he improved same, after the filing of the petition, it is our opinion that he would do so at his own peril. It is our opinion that a property right was impaired when the petition was filed in this case.

It is the general rule, and applied in almost all of the cases which the court has examined, that the valuation of the property which is the subject of the appropriation proceeding should be made as of the time of the taking. In our opinion, although the defendants' property was not physically taken at the time of the filing of the petition, nor was the possession taken from the defendant, substantial property rights were taken from him by the filing of same, and his property has been taken to that extent. I quote from Volume 1 of Lewis on Eminent Domain from §65 as follows:

"If property, then consists not in tangible things themselves, but in certain rights in and appurtenant to those things, it follows that, when a person is deprived of any of those rights, he is to that extent de-

prived of his property, and hence, that his property may be taken, in the constitutional sense, though his title and possession remain undisturbed: and it may be laid down as a general proposition, based upon the nature of property itself, that, whenever the lawful rights of an individual to the possession, use or enjoyment of his land are in any degree abridged or destroyed by reason of the exercise of the power of eminent domain, his property is, pro tanto, taken, and he is entitled to compensation. 'Any substantial interference with private property which destroys or lessens its value, or by which the owner's right to its use and enjoyment is in any substantial degree abridged or destroyed, is, in fact, and in law, a taking, in the constitutional sense, to the extent of the damages suffered, even though the title and possession of the owner remain undisturbed'."

In support of our contention that the filing of a petition constitutes a taking, and that the taking should be construed as the date of filing the petition, I cannot refrain from referring to the case of the South Park Commissioners v Dunlevy et, reported in 91 Illinois, at page 49. This opinion was rendered in 1878, more than fifty-five years ago, but the case is so well considered and the arguments so well grounded that we are constrained to refer to that case, even though the decision was rendered fifty-five years ago. I read from the opinion of Chief Justice Craig as follows:

"This was a proceeding, instituted in the Circuit Court of Cook County, by the South Park Commissioners, for the condemnation of two certain tracts of land, containing twenty acres each, for park purposes.

The petition in the case was filed on the 18th day of April, 1873, but the trial which resulted in the judgment under consideration was not begun until the 18th day of December, 1876, and was not concluded until January 8, 1877, when a verdict was rendered, in which the value of one tract of land was estimated at $74,783.41, and the value of the other tract at $49,856.20.

The commissioners entered a motion for a new trial which was overruled on the 2nd day of June, 1877, and judgment entered upon the finding of the jury, to reverse which the park commissioners have sued out this writ of error, and contend, by their counsel, that the judgment should be reversed, on the following grounds:

1. The court erred in refusing to admit the evidence offered by the plaintiff to show the value of the property in question at the time of the trial; and in limiting the inquiry as to the value of the property to April 18, 1873, the date when the petition was filed."

Five other errors are essigned which are not pertinent to the question now before us. We quote further from the decision of Justice Craig:

"In regard to the first question presented, it probably would not have arisen had a trial occurred soon after the petition was filed; but owing to the long delay in a trial of the cause, after the petition was filed, property depreciated, and consequently the question, when the value should be placed upon the property, became an important one to the parties in interest.

Section 2 of the act to provide for the exercise of the right of eminent domain, in force July 1, 1872, under which this proceeding was commenced, provides that when the party authorized to take property under the act can not agree with the owner or party interested as to the amount to be paid for the same, application may be made to the judge of the circuit or county court by filing a petition either in vacation or term time.

Section 3 provides that if a petition is presented in vacation the judge shall note thereon the day of presentation and also the time when he will hear the same. These sections of the act would seem to imply that it was contemplated that a speedy trial and determination of the amount of damages to be allowed as compensation for property to be taken would be had after a failure to agree upon the amount, and if a trial should be had immediately after the parties had failed to agree upon the amount and the petition had been filed, there would be no probability of a rise or fall, in the market, of the value of the property. Why should the statute provide for the petition to be presented to the judge in vacation, and for him to fix upon a time for trial, unless it was intended that the compensation should be at once ascertained, and the value be confined to the time of filing the petition? **But independent of the statute,** the evident object and import of filing a petition where parties canot agree, is to ascertain the just and true amount of compensation for property to be taken, not five years before the petition is filed, or three or five years thereafter, but at the time of

filing the petition. Suppose the property in question was worth at the time the petition was filed, $100,000.00, and the commissioners, knowing that to be its true value, had provided themselves with money necessary to pay that amount of damages, and filed a petition to condemn the property, but owing to delays, which are sometimes incident to legal proceedings, over which the commissioners had no control, a trial was not had until three years after the petition was filed, and in the meantime, the property had increased in value to $200,000, would it be reasonable to hold that this increased valuation could be proven, and the commissioners compelled to take the property at double its value when they instituted proceedings to condemn and take it? We apprehend a rule of this character would neither be reasonable nor just, and yet the principle contended for by the commissioners would lead to this result."

The court has also examined the case of the **City of Toledo v Bayer, reported in 7 Nisi Prius 324.** If I remember the facts in this case, the City Council or such governing body of the city of Toledo, had passed a resolution to condemn certain property. The property was improved subsequent to the date of the resolution and before the trial was had at which the jury would fix the value. The court in that case fixed the value at the time of the filing of the petition because certain property rights of the defendant would be interfered with or it would have been taken without compensation had the value been fixed at a later date.

I am inclined to think also, gentlemen, that the Supreme Court of the United States has recognized to a certain extent the theory upon which I have been relying in the case of United States v Inlots, 26 Federal, 491, and affirmed in 91 United States Reports 367. The sixth syllabus is as follows:

"Where property in Ohio was condemned by the United States for public use, the whole of the property being taken, held: 'That the measure of compensation, both under the Constitution of the United States and the laws and decisions of Ohio, was the fair market value at the time of condemnation, not as ascertained in cases of forced sale, but as upon a sale by the owners themselves. But it seems that, if the condemnation takes place during a temporary depression due to a stringency in the money market, the value may be estimated as of the period immediately preceding such depression'."

It seems to me that the Supreme Court of the United States, gentlemen, has recognized the principle that the valuation of property should not be made excepting a valuation during normal times; I am inclined to think that is the theory, in fact it is the theory, upon which he court in that case set the date of the valuation at a time preceding the temporary financial stringency. Now as to the finding which was made in this court; the finding of necessity was made in August, 1930, not in 1935. Counsel for the C. & O. Railroad Company have stated in open court that their client was ready and prepared to pay the condemnation money had it been determined in 1930. The jury was subpoenaed and a venire drawn by this court upon that finding of necessity. Now the only thing that has happened here is a delay in the time of impaneling the jury and we have set forth the cause of that delay, and that during this time this unprecedented financial depression has occurred. So it seems to me the C. & O. Railroad Company could suffer nothing whatsoever by having the time fixed, that is the time or the date of the valuation fixed at some date not later than the finding of necessity.

I am inclined to think it would be a better rule if the courts would establish the time of taking as the date of the finding of necessity rather than the date of the view of the jury. Ordinarily, it would make no difference, but in this case it would make a tremendous difference. If the court should find that there was no necessity for appropriation possibly the plaintiff would suffer nothing except the costs which he has incurred by the filing of the petition, but after a finding of necessity, then it is incumbent upon the plaintiff to proceed or suffer the consequences of abandonment; so it seems to me the better rule would be that we should find that the date of placing the value should be on the date of the finding of necessity. Ordinarily one proceeding is followed by another in a very short time; that is, the filing of the petition is followed, as soon as the issues are made up, by an inquiry as to the finding of necessity, and that is immediately followed by a trial by jury. That is almost universally the case, but in this case we have the situation not found in any other case; and inasmuch as the court found that it was

necessary to condemn, and this finding was nine months subsequent to the filing of the petition, we feel that in this case the date upon which the value should be fixed is the date of the filing of the petition, and that if we should fix any other date except that date, and especially if we should fix the date at the present time, the court would be violating the provisions not only of the state Constitution but of the Constitution of the United States, because it would be permitting valuable property rights of the defendant to be taken without just compensation.

Now, as I say, these two questions are tied up with each other, and inasmuch as we have held that he date of the filing of the petition should be the date when the valuation should be fixed, it would be futile to permit an inquiry now as to the necessity of an appropriation. The necessity has been determined in this case by this court, and if the court should permit additional inquiries into the necessity of an appropriation whenever the circumstances of the parties have changed with some degree of materiality, we are inclined to think we would be going far beyond the intent of the legislature in making the provisions they have made for appropriations.

Now, counsel for Mr. Ornstein, the defendant, have raised the question that the motion is not well taken, but that the answer should be attacked by demurrer. We cannot agree with Mr. Bolin, counsel for defendant, in that position. He has referred us to 8 Nisi Prius Report—

MR. BOLIN: 8 Nisi Prius, new series,, 630.

THE COURT: We examined that case. In that case we find that the court found that the only way to attack the interrogatories was by demurrer; he did not refer to the petition which was filed, he only referred to the interrogatories. In our opinion, the plaintiff here has filed the proper pleading to attack the answer and amended answer, that is by motion, and the court for the reasons above given, will sustain the motion and those two pleadings will be stricken from the files.

Examining the various cases, another question is suggested which the court feels should be discussed since we have made the finding we have, and that is whether or not, if and when the jury places a valuation upon the property, the defendant would be entitled to interest from the date of the filing of the petition. We feel that that question would inevitably be presented to the court, although it is not before the court now, but the court is ready to inform counsel as to what his position would be in case that question arises, and he would say the owner would not be entitled to interest because of the fact that he had had the use of the property, he has had the control of his property and has had the income, such income as he could get from it. The entire property was not taken, only valuable property rights were impaired by the filing of the petition; but as he has had charge and control of the property and income of the property during this time, and the plaintiff has had possession, control and income of such money as they would have paid had the award been made shortly following the filing of the petition, I think that is all, gentlemen.

MR. RECTOR: Note plaintiff's exceptions.

THE COURT: I don't know, gentlemen, whether you consider this a part of the hearing or not, but I wanted to get all these preliminary matters ironed out. When you present this matter, you of course, will take exceptions when the jury is present, but, of course, I know both of you wish to save your exceptions.

MR. RECTOR: Do you want to save your exceptions Mr. Bolin?

MR. BOLIN: Yes. I want to except on behalf of the owner to that part of the ruling of the court which sustains the motion of the plaintiff to refuse to consider our answer on the ground that that cannot be done by motion, and also on the ground that the court is also refusing to require answers to the interrogatories attached to the answer without having considered the relevancy of the various interrogatories interposed, and also on behalf of the defendant I wish to except to the ruling of the court, if it be a final ruling, as to the computation of interest on the amount that should be paid.

THE COURT: Really that should not be a part of this entry here.

MR. BOLIN: I say if it is a final ruling.

THE COURT: I am simply announcing my ruling, if it should be brought up.

MR. BOLIN: Better let the record show that we are excepting and now tendering evidence of the facts specified in our amended special answer, to which the interrogatories were attached; under court's ruling that will not be necessary, and to that we are saving our exceptions.

THE COURT: Very well, that is all.