CLEVELAND (CITY), PLAINTIFF-APPELLEE, v. CARCIONE, DEFENDANT-APPELLANT, AND BRENNAN, COUNTY TREASURER ET, DEFENDANTS.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26146. Decided April 25, 1963.

Mr. *Bronis J. Klementowicz,* Law director, Mr. *Gerald F. Sweeney* and Mr. *Thomas E. Lenahan,* assistant law directors, for plaintiff-appellee.

Mr. *Charles S. Tricarichi,* for defendant-appellant.

KOVACHY, P. J. This is an appeal on questions of law from a judgment entered in the Court of Common Pleas wherein the defendant appellant, Nettie Carcione, was awarded $30,-000.00 as compensation for property owned by her and appropriated in fee simple by the City of Cleveland.

Council for the City of Cleveland in 1957 passed an ordinance authorizing the St. Vincent Urban Renewal Plan which was followed by the adoption of Resolution No. 2065-59 on October 26, 1959, as an emergency measure, declaring the necessity and intention of appropriating the fee simple title in and to certain real estate for the rehabilitation of a blighted area designated as "St. Vincent Center Urban Renewal Project Ohio R-13." Appellant's property, located at the northwest corner of East 28th Street and Woodland Avenue in the City of Cleveland and consisting of a four-story brick building and a three-story brick building, was among the properties specifically described in the resolution in which "this Council hereby declares its intent to appropriate and does appropriate the fee simple interest * * *."

However, the appropriation case to assess compensation to be paid by the City of Cleveland to appellant for the fee simple title for her property was not filed until May 4, 1962, in compliance with Ordinance No. 279-62 passed by the Council of the City of Cleveland authorizing and directing the Director of Law to apply to the court to assess compensation for appellant's property. The cause was tried to the jury on June 26, 1962.

The Carcione property was constructed in 1884. It has been in the Carcione family for forty years. The appellant, Nettie Carcione, inherited the property from her husband when he died in 1954. The buildings face Woodland Avenue, a main thoroughfare in the City of Cleveland running in a generally east and west direction. At the commencement of the St. Vincent Renewal Project, Woodland Avenue, both to the east

and west, was solidly built up in a community of residential, commercial, retail and small shop, and manufacturing structures. Appellant's buildings contain two stores and living quarters of fourteen suites comprising sixty-two rooms. The surrounding area was populated by families in the low and middle low income groups.

Following the 1957 ordinance, the Commissioner of the Division of Urban Renewal for Cleveland instructed the Cuyahoga County Welfare Department to notify all relief tenants living in the St. Vincent Slum Area to move out of the area. This was done by letter sent to them, with the admonition that if they failed to comply within a reasonable time the Welfare Department would stop their rental payments. Three relief clients living in the Carcione property received such notices in the year 1958. Two moved out that same year while the third died in a hospital. The County Welfare Department also received information of streets and numbers in the area where demolitions were planned. The listings of these streets and numbers were distributed to case workers who in turn would instruct people living on these streets to move elsewhere. These people were aided in finding new living quarters by the relocation office of the City of Cleveland, Cleveland Metropolitan Housing Authority, and the County Welfare Department which sent people out to secure addresses of available housing facilities.

The City pursued a policy of demolishing buildings piecemeal in the area as it acquired title to the land. By the time this cause to assess compensation for appellant's property came to trial in the Court of Common Pleas, some five hundred forty-five buildings out of a total of five hundred eighty-four had been razed and only thirty-five to forty structures, including appellant's, remained standing in a vast desert.

The occupancy of the Carcione property decreased progressively, year by year, as these procedures continued. In 1957, when the Renewal Project was undertaken, the stores and all suites were rented but by June, 1962, at the time of the appropriation trial, the buildings were all but abandoned and the income from rentals a mere pittance. The gross income those years was as follows:

| 1957 | $8110.00 |
| 1958 | 7323.00 |
| 1959 | 3698.00 |
| 1960 | 420.00 |
| 1961 | 565.00 |

In June of 1962, at the time of the trial, one store was rented at $50.00 per month and two suites were occupied by tenants out of work and unable to pay.

The decrease in the gross income of this property was directly caused by the activities of the City of Cleveland in furtherance of the Renewal Project. Relief clients were compelled to leave the area before the City was ready to appropriate the properties. Inhabitants were urged to leave the area and new facilities arranged for them elsewhere.

The psychological effect upon the residents by these tactics was to impel them to leave the St. Vincent Renewal Area as soon as possible whether or not the buildings in which they resided were marked for demolition.

Mrs. Carcione had spent $11,024.00 upon orders given to her as the owner by the City of Cleveland in 1955, 1956 and 1957 to replace hot water tanks, electrical wiring, gas lines, water lines and roof so that the buildings were in reasonably good condition during the years 1957, 1958 and 1959 when the renewal program was getting under way. The demolition of buildings and the exodus of the inhabitants in the area, coupled with many vacancies in her buildings together with the resulting lack of police protection, permitted extended vandalism during the years 1961 and 1962. By June of 1962 practically all of the plumbing fixtures and hot water tanks had been removed, the plaster was down, doors and windows were broken, window sashes removed, floors torn up, drain pipes and galvanized plumbing torn up, wiring torn out, all fixtures missing, and the roof was leaking, leaving the buildings in an almost complete state of dilapidation.

The real estate experts had varying opinions as to the fair market value of this property. Appellant's expert estimated its value at $51,000.00 in 1958. Appellant, Nettie Carcione, claimed a valuation of $65,000.00 in 1958 when the property was in good condition and occupied. The City's experts placed a

valuation on the property of $34,000.00 to $35,750.00 in 1960 and $25,600.00 to $26,850.00 at the time of trial.

Appellant sets forth eleven errors committed to her prejudice by the Court of Common Pleas. Number eleven appears to be the core of the claims of error since the determination of most of the others depends upon its determination.

It reads as follows:

"11. The Court erred in its general charge to the jury, in instructing the jury that the standard by which compensation is to be measured is the fair market value of the property at the time of trial."

Parts of the general charge of the court to the jury pertinent to the consideration of this assignment of error read as follows:

"The City of Cleveland, for this taking of Nettie Carcione's property is required to compensate her.

"This action is all-inclusive. Nettie Carcione will have no other means of recovery and compensation except in this proceeding. It, therefore, becomes your duty to determine this question: What amount of money will fairly compensate Nettie Carcione for her parcel with the two buildings thereon which the City of Cleveland is appropriating?

"The standard by which compensation is to be measured by you members of the jury, is the fair market value of the property at the time of this trial.

"* * *

"* * * You will consider * * * the character and location of this parcel in Cleveland with relation to the surrounding neighborhood.

"You will consider the use to which the land is now being put and the highest and best use to which the land is reasonably adaptable and to which it may be put in the future within the limitations of the zoning ordinances and classifications applicable to the property as of the date of the trial of this case.

"Further, you will consider the nature of the buildings located on this land, their type of construction, the age and condition of the buildings, the use to which the buildings are now being put and to which with reasonable certainty they would have hereafter been put had the property not been taken by the City of Cleveland."

Article I, Section 19, of the Constitution of Ohio, in parts pertinent here reads:

"Private property shall ever be held inviolate but subservient to the public welfare. * * * Where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner."

In *Illinois Cities Water Co.* v. *City of Mt. Vernon*, 11 Ill. (2d), 547, 144 N. E. (2d), 729, headnote five of the North Eastern Reporter, Second Series, reads: :

"Eminent Domain.

"Nothing short of amount which will put condemnee in as good a financial condition after transfer as it was before will conform to constitutional requirement of just compensation."

The Supreme Court of Rhode Island had the following to say in the case of *Stafford* v. *City of Providence*, 10 R. I., 567, at page 571:

"* * * Upon any principle of justice, the person whose land is taken, whether in whole or in part, should be no worse off than his neighbors whose land is not taken, otherwise he does not receive that just compensation the Constitution provides for."

And in 19 Ohio Jurisprudence (2d), 479, Eminent Domain, Section 68, it is stated:

" 'Compensation' means the sum of money which will compensate the owner for the land actually taken or appropriated."

In *United States* v. *Miller*, 317 U. S., 369, 87 L. Ed., 336, headnote one of the Lawyers' Edition reads:

" 'Just compensation' within the meaning of the provision of the Fifth Amendment that property shall not be taken for public use without just compensation means the full and perfect equivalent in money of the property taken, whereby the owner is put in as good a position pecuniarily as he would have occupied if his property had not been taken."

The jury under the instructions delineated above determined the fair market value of appellant's property as it stood at the time of trial, virtually abandoned, vandalized and badly deteriorated, in the midst of a wasteland. Morever, it was permitted to view the premises in such a dilapidated state for the

purpose of being able to better understand and follow the evidence presented in court describing such condition and surroundings. But the fact remains that the property described by the testimony and viewed by the jury was totally different in condition and surroundings than the property that existed before the City of Cleveland had taken any affirmative steps to effectuate the St. Vincent Renewal Project. Mrs. Carcione's property at that time consisted of buildings in reasonably good condition, fully rented, and located in a built-up urban area with business activities and living conditions in keeping with the economic status of those residing in the area. The mere recitation of these bare facts, it seems to us, demonstrates that the evaluation of her property as it was at the time of the trial was unjust to her. Her property had undergone radical changes for the worse caused by activities carried on to further the very project which prompted the City of Cleveland to appropriate it. Yet, under the procedures pursued in the trial court, the appellant was compelled to suffer a substantial financial loss while the City was permitted to obtain her property at a much depreciated value.

The rule of law is well-established, in Ohio and elsewhere, that the fair market value of property appropriated, which property is a part of a program of improvement by a public body, cannot be enhanced by the value of such improvement to it. The Supreme Court of Ohio in *Nichols* v. *City of Cleveland*, 104 Ohio St., 19, 135 N. E., 291, said in paragraph one of the syllabus:

"Where one entire plan has been adopted for a public improvement and from the inception a certain tract of land has been actually included therein, the owner of such tract in a condemnation proceeding therefor is not entitled to an increased value which may result from the improvement, where its appropriation is a condition precedent to the existence of the improvement."

And in *Gibson et al.* v. *City of Norwalk*, 13 O. C. C., 428, 7 C. D., 6, the second paragraph of the syllabus reads:

"In determining the market value of the various tracts of land sought to be appropriated, the jury is precluded from considering their enhanced value, if any they may have, on

account of the contemplated improvement in the water-works by the city.''

See, *Smith* v. *Commonwealth*, 210 Mass., 259; *St. Louis Elec. Terminal Ry. Co.* v. *MacAdaras*, 257 Mo., 448; *Dorgan* v. *City of Boston*, 94 Mass., 223; *United States* v. *Certain Lands in Town of Narragansett*, 180 Fed. Rep., 260; *United States* v. *Chandler-Dunbar Co.*, 229 U. S., 53; *Mowry* v. *City of Boston*, 173 Mass., 425; *Shoemaker* v. *United States*, 147 U. S., 282, 304; *In the matter of the Water Commissioners and William Beach Lawrence*, 3 Ed. C. R., 552; *Northern, etc. R. R. Co.* v. *Coleman*, 3 Wash., 228; *May* v. *City of Boston*, 158 Mass., 21.

The reverse of such a situation—the depreciation in value of a parcel of property at the time appropriated where the property is included in a general plan of condemnation to carry out a specific program of condemnor—is analogous in principle and should, we believe, invoke the application of a parallel rule of law.

It is said in Lewis on Eminent Domain, Vol. 2 (3 Ed.), 1329:

''* * *

''If the proposed improvement had depreciated the value of the property, it would be very unjust that the condemning party should get it at its depreciated value; and the correct rule would seem to be that the value should be estimated irrespective of any effect produced by the proposed work. * * *''

In Ohio, the rule of law generally adopted in appropriation proceedings, where the appropriator has not taken possession of the property prior thereto, is that the value of the property taken be computed by the jury as of the time of trial. 19 Ohio Jurisprudence (2d), 535, Eminent Domain, Section 118.

However, the application of that rule of law may result in an award of compensation to the owner of the property appropriated which is unreasonable and unjust under unusual facts and circumstances, as are present in the case at bar. Under such circumstances, the time as of which the evaluation of the property should be made must comport with the peculiar facts and circumstances of the case so as to assure the owner of the property compensation in money which is just as contemplated by the Constitution of Ohio.

In the case of *Ornstein et. v. Chesapeake & Ohio Rd. Co.*, 26 Ohio Law Abs., 78, 36 N. E. (2d), 521, the Court of Appeals of the Second District of Ohio upheld a rule of law of the probate court that the jury must compute the fair market value of property as of the time of the filing of the petition in appropriation rather than at the time of trial where six years had elapsed between the time of the filing of the petition and the trial and when an unprecedented financial depression had occurred in the interval, causing a general decline in the value of real estate. The Supreme Court refused certification.

See also, the opinion by the trial court appearing in *Hocking Valley Ry. Co.* v. *Ornstein et*, 18 Ohio Law Abs., 424, 2 Ohio Opinions, 351.

Under paragraph six of the syllabus in *United States* v. *In-lots*, 4 Ohio Fed. Dec., 268, the Circuit Court of the United States held as follows:

"Where property in Ohio is condemned by the United States for public use, the measure of compensation is the fair market value at the time of condemnation, not as ascertainable in cases of forced sale, but as upon a sale by the owners themselves, unless the condemnation takes place during a temporary depression due to a stringency in the money market, when it would seem the value may be estimated as to the period immediately preceding such depression."

This case was affirmed by the Supreme Court of the United States in *Kohl et al.* v. *United States*, 91 U. S., 367.

Under the facts in this case and the law applicable thereto, we conclude that Mrs. Carcione was entitled to an evaluation of her property irrespective of any effect produced upon it by the action of the City in carrying out the St. Vincent Urban Renewal Project. Hence, the standard for measuring the compensation to be awarded her should have been the fair market value of it as it was immediately before the City of Cleveland took active steps to carry out the work of the project which to any extent depreciated the value of the property. As a consequence, we hold that the trial court was in error in instructing the jury that the standard by which compensation was to be measured was the fair market value of the property at the time of the trial.

Assignment of Error Number One reads:

"The court erred in permitting the jury a view of the premises."

In our opinion, no useful purpose was served in permitting the jury to view the premises and in the state of the record in this case it was prejudicial to the substantial rights of the appellant.

In the case of *City of Chicago* v. *Koff*, 341 Ill., 520, 173 N. E., 666, headnote two of the North Eastern Reporter states.

"* * * Property consisting of a four story brick structure containing storerooms and apartments * * * had become very much deteriorated and the apartments were vacant and windows and fixtures broken, and jury therefore could get a most unfavorable impression from view of building."

Assignment of Error Number Four reads:

"The court erred in not permitting the defendant, Mrs. Nettie Carcione, to testify as to the condition of her property in 1958 and 1959."

Assignment of Error Number Five reads:

"The court erred in not permitting City's appraiser, Mr. Larsen, to testify on cross-examination as to the condition of occupancy of land surrounding defendant appellant's property."

Assignment of Error Number Six reads:

"The court erred in not permitting City's appraiser, Mr. Kaserman, to testify on cross-examination as to the rate of depreciation used in 1960 and the fair market value of defendant appellant's property in 1960."

Assignment of Error Number Seven reads:

"The court erred in not permitting City appraiser, Mr. Kaserman, to testify on cross-examination as to the cause of depreciation of defendant appellant's property."

Assignment of Error Number Eight reads:

"The court erred in not permitting City's appraiser, Mr. Kaserman, to testify on cross-examination as to the rate of economic life used in 1960."

Assignment of Error Number Nine reads:

"The court erred in not permitting the City's appraiser, Mr. Kaserman, to testify on cross-examination as to whether or not he considered improvements in his appraisal figure."

We sustain all of the above assignments of error as being prejudicial to the substantial rights of appellant in view of the

conclusions reached by us with respect to Assignment of Error Number Eleven. The remaining assignments of error we overrule as not prejudicially erroneous.

The judgment, accordingly, is reversed as contrary to law and cause remanded for further proceedings according to law not inconsistent with this opinion.

Judgment reversed.

Exceptions. Order see journal.

SKEEL, C. J., and SILBERT, J., concur.

L—, JR., IN RE.

Juvenile Court, Cuyahoga County.

Docket Number 208 836.   Decided September 9, 1963.

