In re Appropriation for Highway Purposes: Director of Highways, Appellant, *v.* Olrich et al., Appellees.

[Cite as Director of Highways v. Olrich, 5 Ohio St. 2d 70.]

(No. 39428—Decided January 26, 1966.)

72

Mr. *William B. Saxbe*, attorney general, *Mr. I. Charles Rhoads* and *Mr. Chester R. Early*, for appellant.

*Messrs. Cline, Bischoff & Cook* and *Mr. Norman E. Bischoff*, for appellees.

BROWN, J. It is recognized in this state that property taken for public use shall be valued as of the date of trial, that being the date of take, unless the appropriator has taken possession prior thereto, in which event compensation is determined as of the time of the taking. *In re Appropration for Highway Purposes*, 167 Ohio St. 463; *Nichols* v. *City of Cleveland*, 104 Ohio St. 19; *Board of Education of Cleveland City School Dist.* v. *Hecht*, 102 Ohio App. 521 (appeal dismissed, 165 Ohio St. 200); *In re Appropriation for Highway Purposes*, 90 Ohio App. 471.

The reasons for this rule are well stated in the authorities cited. One of the most substantial reasons given is that it appears from the statutes that the Legislature intended this to be the rule. In this connection it may be pointed out that Section 5519.01, Revised Code, contemplates possession by the director before trial, while Section 5519.02, Revised Code, provides that the director, "if he has not occupied or changed the property appropriated, may, at any time but not later than 30 days after the final determination of the cause, elect to

abandon the appropriation proceedings upon the payment of the costs and reasonable attorney fees to be fixed by the court.''

These statutes indicate a legislative intent consistent with the constitutional language requiring that the property be taken before compensation is required.

It is, therefore, clear that vandalism or damage to the property itself which occurs before the taking is the owner's loss, while vandalism which occurs after the taking is the loss of the appropriator.

Possession of the property by the director occurred on August 6, 1963, prior to the trial of the cause. It must be assumed that the order of the city of Toledo directing the owners to make certain repairs in order to make the property fit for human habitation was a valid exercise of the police power; no claim to the contrary was made. We find, then, that the validity of the property owners' argument that a taking occurred prior to August 6, 1963, hinges upon their claim that they sought to obtain a building permit for the purpose of improving the building so as to make it habitable and were told that none was available because of the imminence of the appropriation proceedings. The question of whether the refusal of a building permit may be grounded upon the fact that a property lies in the path of a proposed highway is not before us. The fact that the informal inquiry met with an informal refusal cannot, standing alone, be made the basis for a claim that a subsequent order certifying the property for abatement as unfit for human habitation was a taking for public use.

*Research Associates, Inc.,* v. *New Haven Redevelopment Agency,* 152 Conn. 137, 204 A. 2d 833, a case which is on all fours with the instant case, contains the following, at page 834 of the Atlantic Reporter:

''* * * The plaintiff argues that the date of the taking was in fact somewhere 'from August 1961 until December 1961.' The basis of this most unusual contention is apparently a claim, unsupported by any allegations in the complaint, of a conspiracy between the defendant, on the one hand, and the New Haven Board of Health and the 'city authorities,' on the other, to drive the price of the plaintiff's land down by denying the plaintiff the building permits necessary to repair the buildings

74

and then condemning the premises, on December 29, 1961, as unfit for human occupation.

"* * * there is nothing in the record to support the plaintiff's claim that the actions of the Board of Health and the 'city authorities' were done in collaboration with the defendant, or that these actions were anything but a legitimate exercise of police power. Indeed, no attempt was made to appeal from the action of the Board of Health in condemning the property as unfit for occupancy or from the action refusing the issuance of building permits."

Had the order to vacate been grounded upon the prospective taking for highway purposes, we would have to consider the rule in *City of Cleveland* v. *Carcione*, 118 Ohio App. 525. In that case we find the following:

"The city pursued a policy of demolishing buildings piecemeal in the area as it acquired title to the land. By the time this cause to assess compensation for appellant's property came to trial in the Court of Common Pleas, some five hundred forty-five buildings out of a total of five hundred eighty-four had been razed and only thirty five to forty structures, including appellant's, remained standing in a vast desert."

Those *Carcione* facts are not present here. Nor is there, as there was in *Carcione*, any showing of any "active steps to carry out the work of such project which to any extent depreciated the property." The ground upon which this property was ordered vacated was that it was not suitable for human habitation. This order must in the absence of an appeal be considered to be a valid exercise of the police power.

In view of the foregoing, the admission of the owners' evidence of value of the building in October 1960, the exclusion of the evidence proffered as to its value in July 1963 and the determination that the date of taking was October 28, 1960, were prejudicial errors requiring a new trial.

Accordingly, the judgment of the Court of Appeals is reversed, and the cause is remanded to the Court of Common Pleas for further proceedings.

*Judgment reversed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT and SCHNEIDER, JJ., concur.