IN RE APPROPRIATION OF LAND FOR HWY. PURPOSES:
BEKOS ET AL., APPELLEES, *v.* MASHETER, DIR. OF HWYS.,
APPELLANT.

[Cite as Bekos v. Masheter, Dir. of Hwys., 15 Ohio St.
2d 15.]

(No. 40966—Decided June 19, 1968.)

*Mr. John H. Harpen,* for appellees.

*Mr. William B. Saxbe,* attorney general, and *Mr. I. Charles Rhoads,* for appellant.

HERBERT, J. May a court establish a date of take for the purpose of evaluating private property appropriated for a public purpose which is earlier than the date of trial or the actual taking of possession by the appropriating authority? In the ordinary case, the rule is stated in the first paragraph of the syllabus in *Director of Highways* v. *Olrich,* 5 Ohio St. 2d 70, which reads:

"Where a public authority having the power of eminent domain takes possession of property prior to the trial of the action to assess compensation, such compensation shall be awarded on the basis of the value of the property as of the date upon which possession is taken."

A limitation to this rule has been recognized and is announced in the first paragraph of the syllabus in *Nichols* v. *Cleveland,* 104 Ohio St. 19, which reads:

"Where one entire plan has been adopted for a public improvement and from the inception a certain tract of land has been actually included therein, the owner of such tract in a condemnation proceeding therefor is not entitled to an increased value which may result from the improvement, where its appropriation is a condition precedent to the existence of the improvement."

Since, under the doctrine of the *Nichols case,* a property owner may not profit from an increase in value resulting from the improvement, he may not be made to suffer the depreciation of his property occasioned by a public project in which his property is included. See *Giesy* v. *Cincinnati, Wilmington & Zanesville Rd. Co.,* 4 Ohio St. 308, 330 and 331. The *Olrich case, supra,* holds that the mere condemnation of private property as a nuisance is not a taking or a basis for establishing the date of valuation in a pending eminent domain proceeding. In that case, it was noted that the facts were not present which would occasion consideration of *Cleveland* v. *Carcione,* 118 Ohio App. 525. The first paragraph of the syllabus in *Carcione* reads:

"Where the value of a parcel of property appropriated for an urban renewal project has depreciated because of the action of the urban renewal authority in the appropriation of surrounding property and the destruction of the buildings thereon, with the attendant loss of income to and deterioration of property remaining in such neighborhood, the owner of such parcel is entitled to that compensation therefor which reflects the value of such property *before* its depreciation in value caused by such urban renewal project—*i. e.,* the fair market value thereof immediately before such urban renewal authority took active steps to carry out the work of such project which to any extent depreciated the value of such property."

In the instant case, Lucas County began acquiring properties for the highway department in the immediate vicinity of appellees' property over five years before trial. The demolition of structures on these neighboring properties began about eight months later and over four years before trial. Neither the Director of Highways nor Lucas County

attempted to purchase appellees' property during this pretrial period because of an uncertainty that a full take would be required. By the time it was certain that a full take was necessary, and this action to assess compensation for appellees' property began, the structure thereon had been demolished by the city of Toledo as a public nuisance.

Although it does not appear that at the time of trial the landowners' property "* * * remained standing in a vast desert," as found in *Carcione,* the circumstances are, in a way, much worse for the landowners in this case than in *Carcione.* Under the rule for which the state contends, appellees would receive *nothing* for their valuable duplex structure, as it had been demolished prior to the time of trial, unlike *Olrich, supra,* where there was "[no] showing of any 'active steps to carry out the work of such project which to any extent depreciated the property.'" Here, there was proof of such depreciation. The condemnation in this case was not independent of the appropriating authority's activity, but resulted from, and was symptomatic of, the depreciating effects of such activity. Under these circumstances, it was proper to establish a date of take which was reasonably related to events in the vicinity of the property taken whereby the appropriating authority's activity contributed to or caused substantial depreciation of the property taken.

This rule facilitates the valuation of property taken by adjusting the date of valuation in order to exclude depreciation or appreciation due to delays in public projects and promotes the constitutional requirement that just compensation be paid. See Amendment V, Constitution of the United States; Section 19, Article I of the Ohio Constitution. However, a warning is in order. While the activity of the appropriating authority in the vicinity, and the effects thereof are relevant to the date of taking, what we say here is not intended to determine *what* is a taking for which compensation must be paid. See *Director of Highways* v. *Olrich, supra; Smith* v. *Erie Rd. Co.,* 134 Ohio St. 135.

The record in this case shows that, on the issue of the

date of take, there was elaborate testimony before the trial court; that in the years 1961 and 1962 many properties in the immediate vicinity of appellees' property were acquired for highway purposes; and that a number of these were vacated and later demolished early in 1962. The testimony is that following the first acquisitions, vacations, and demolitions, the neighborhood deteriorated and there was much vandalism, rodent damage, and fire damage to structures therein, including appellees' duplex. The trial court fixed the date of take as July 1, 1962. Clearly, such date is not based solely on the condemnation of appellees' duplex as a public nuisance by the city in January 1964. It is reasonably related to the activity of the appropriating authority in the immediate vicinity of the property taken, which activity caused depreciation of such property. The testimony of appellees' witnesses as to the valuation of the land varied, i. e., at $1,700, $1,500, and $1,600, and the structure at $10,-300, $8,000, and $6,900 respectively. The state's appraisers valued the land only at $1,190 and $840, expressing no opinion as to the value of the structure. The jury returned a verdict awarding $1,100 for the land and $3,700 for the structure on the date of take established by the court, together with $740 in interest from August 3, 1963, the date on which the last tenant testified he vacated the premises. There was evidence of value, therefore, to support the verdict, and the award of interest is consistent with *State, ex rel. Steubenville Ice Co.,* v. *Merrell,* 127 Ohio St. 453. For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

ZIMMERMAN, MATTHIAS, TROOP, and SCHNEIDER, JJ., concur.

TAFT, C. J., and BROWN, J., dissent.

TROOP, J., of the Tenth Appellate District, sitting for O'NEILL, J.

BROWN, J., dissenting. I disagree with the opinion of the majority. I think the date of valuation should continue

to be either the date that the public authority takes possession, if it precedes the trial, or the date of trial. See *Director of Highways* v. *Olrich,* 5 Ohio St. 2d 70.

I agree that the value of the property should be estimated irrespective of any effect produced by the public project itself. See *Nichols* v. *Cleveland,* 104 Ohio St. 19, and 2 Lewis, Eminent Domain, 2d Ed., 1329.

The majority opinion confuses and merges the two concepts above; that is, the date of valuation and the elements of evaluation. In an effort to change the elements of evaluation in a difficult case, the majority allows a trial court to change the date of valuation. This holding is both unnecessary and unwise. It is unnecessary because the problem which this case raises can be adequately dealt with by adherence to the rule, stated above, that value should be estimated irrespective of any effect produced by the public project. It is unwise because it takes from the jury important questions of fact concerning whether particular aspects of depreciation were or were not caused by acts of the condemnor. By setting the date of valuation, the trial judge in this case made this decision and excluded determination of this issue by the jury.

The majority opinion cites *Cleveland* v. *Carcione,* 118 Ohio App. 525, to support today's holding. The facts and the result in that case are consistent with this dissent.

In *Carcione* the tenants living on the Carcione property, who were relief clients, were notified by the condemnor long before the trial that their relief rental checks would be terminated if they did not move out. Under the undisputed evidence in that case, this action was taken by the condemnor. It could rightly be concluded that this was an act of domination which amounted to a taking. The date of this taking, then, and not the date of the trial, as used by the trial court, might have been a proper date of valuation. The reversal by the Court of Appeals would have been justified upon this alone.

The reversal in *Carcione* also would have been justified because the trial court excluded evidence which should have been admitted, and improperly instructed the jury.

The trial court did not mention that depreciation caused by the public project was not to be an element of the valuation, and yet such depreciation had certainly appeared in the evidence. The jurors' view of the premises, standing, as they were, in a "vast desert" where five hundred and forty-five buildings had been razed, undoubtedly affected their appraisal of value on that date.

The instant case involves substantially different facts. There is no showing of a taking by the public authority before the date of the valuation trial. The last tenant to occupy the property in the instant case was in no way interfered with by the state or the city and, in fact, testified that he moved out in August 1963, because of the condition of the premises, which he described as being "not good; all right in the summer but in the wintertime couldn't stay warm in there." The tenant's testimony was that the property was infested with rats and roaches and that the rent was too high.

There is no showing that Becos' property stood virtually alone in a "vast desert," and yet it is to such evidence that the syllabus of the majority opinion applies. This evidence should be admissible in a proper case, not to change the date of the take, but rather to show depreciation by state action.

*Carcione* contemplated retrial and that upon retrial a jury would be permitted to hear evidence bearing upon the question of value of the property taken so that its true value in money, undiminished by depreciation caused or brought about by active steps taken by the public authority in carrying out the work of the project, could be determined.

*Carcione* did not purport to permit the trial judge, upon a preliminary hearing, to find a new date of take arbitrarily or to exclude from the jury's determination the question whether the depreciation claimed to have occurred by reason of the action of the condemnor was in fact due to that action.

In view of Section 163.21, Revised Code, which permits the condemnor to abandon appropriation proceedings

at any time not later than 90 days after final determination of the cause if it has not *taken possession of the property appropriated,* it seems most unwise to permit a trial court arbitrarily to equate vacancy and ensuing vandalism with constructive taking of possession by the condemnor.

This case should be reversed with instructions to the trial court to admit evidence offered which tends to show or negate depreciation of the value of the property connected with acts of the condemnor. Where the property owner is permitted to introduce such evidence, the condemnor should be given equally broad latitude to rebut such evidence so as to make up a proper factual issue for the jury.

TAFT, C. J., concurs in the foregoing dissenting opinion.