IN RE APPROPRIATION FOR HWY. PURPOSES OF LANDS OF GOLDFLIES STORAGE & MOVING CO. ET AL.

[Cite as In re Appropriation for Hwy. Purposes, 18 Ohio App. 2d 116.]

(No. 3360—Decided March 22, 1969.)

*Messrs. Shaman, Winer, Shulman & Ziegler,* for appellee.

*Mr. Paul Brown,* attorney general, *Mr. William A. Clark* and *Mr. C. William Dawson,* for appellant Director of Highways.

CRAWFORD, J. During the 1950's the city of Dayton, under a plan for federal financing, embarked upon the East Dayton Urban Renewal Project, passed a number of ordinances and resolutions for that purpose from 1951 through 1960, and began acquiring property in the area about May 1959. This included the land and building of appellee Goldflies Storage & Moving Company, located at the northeast corner of Wayne Avenue and Richard Street.

On October 31, 1960, the city and Goldflies agreed upon a purchase price of $43,300. However, the purchase was never consummated because the city learned meanwhile that the State Highway Department, which was constructing U. S. Highway No. 35 through the city, was about to relocate the highway and acquire the Goldflies property for that purpose. The city was, therefore, unable to ob-

tain the anticipated federal funds to complete the purchase of the property for urban renewal. The city co-operated with the state in acquiring properties needed for the highway.

The activities incident to both the urban renewal and highway projects involved acquisition and demolition of properties, displacement of residents, and general disruption of life in the entire area at and after the time when the city was negotiating with appellee. Consequently, the neighborhood rapidly deteriorated, and the value of appellee's property dropped sharply. Appellee found it impractical to keep the property in repair and operation. Resulting vandalism reduced its value still further.

Counsel for the director would hold appellee responsible, in part at least, for this deterioration. We do not believe the owner can be charged with failure to prevent or delay the inevitable destruction. Nor was the director damaged by the owners's not keeping the property in prime condition for the wrecking ball.

On April 11, 1966, the Ohio Director of Highways filed a declaration and finding, depositing only $13,000 for acquisition of appellee's property.

In order to assure just compensation as provided by Section 19, Article I of the Constitution, the court fixed the date of October 31, 1960, as that at which the fair market value should be determined. The jury awarded the sum of $40,000.

The Director of Highways has appealed, contending that the value should be fixed as of the date of trial, or at least not earlier than the date on which he took physical possession of the property for highway purposes.

If the city had been permitted to continue its plan to use the property for its urban renewal project, there could be no doubt of the reasonableness of the date of October 31, 1960, for the evaluation of the property, whether the project had increased or diminished its value. *Mansfield* v. *Balliett* (1902), 65 Ohio St. 451; *Nichols* v. *Cleveland* (1922), 104 Ohio St. 19; *Bekos* v. *Masheter, Dir. of Hwys.* (1968), 15 Ohio St. (2d) 15; *Cleveland* v. *Carcione* (1963), 118 Ohio App. 525.

Counsel for the director argues that if the city's urban renewal activities had already caused depreciation, the landowner should look to the city for recovery. If the city, acting alone, had of its own volition declined to go forward with the acquisition after its activities had materially reduced the value of the property, we would have an entirely different question from the one now before us.

But where, as here, the city first began to acquire, and thereby to cause depreciation, and then yielded to one or more other acquiring and co-operating government agencies, the principle set forth in *Cleveland* v. *Carcione* (1963), 118 Ohio App. 525, and in *Bekos* v. *Masheter, Dir. of Hwys.* (1968), 15 Ohio St. 2d 15, will control.

The proper time for valuing the property is before the value "has depreciated due to the activity of the appropriating authority" or authorities "in acquiring other properties in the immediate vicinity and demolishing buildings thereon, causing deterioration of the neighborhood and depreciation of the remaining properties." (Quotations from *Bekos.*)

The director claims error in admitting in evidence the testimony of Mr. John Theobald, called as witness by the landowner, as to the October 31, 1960, value of the property. Mr. Theobald has had twenty years experience as a real estate broker and has done appraising. He has served for several years as Superintendent of Development in the city's Department of Community Development, or Department of Urban Renewal. As such he was actively engaged in the acquisition of property for the East Dayton Urban Renewal project, was familiar with the area and with the property here in question, and negotiated with Goldflies in 1959 and 1960 for its purchase. The city had also employed outside appraisers.

The principal objection to this testimony was that it was based upon hearsay, namely, the appraisals of others. The witness testified in part as follows:

"Q. I will ask you again whether or not you were able to determine the fair market value of this property at Wayne and Richard at the time you had these discussions

with the property owner? (Objection overruled.) A. We had had appraisals prepared for that property to estimate the fair market value of the property.

"Q. From those appraisals did you arrive at what you considered the fair market value? A. Yes, we did.

"Q. What was that figure? (Objection overruled.) A As I recall, it was $43,000.00."

It will be observed that Mr. Theobald did not state in so many words his own personal opinion. He said that "we" arrived at a fair market value. This was apparently a composite opinion, in which he obviously participated. His official responsibility, experience, knowledge of the facts, and the property, indicate that he was well qualified to give an opinion.

The record shows that in 1960 the city did offer appellant the sum of $43,300. Two other appraisers gave their opinions of the value as of that time, one stating it to be $43,600, the other, $42,250. The verdict, as we have noted, was for $40,000.

We believe the testimony of Mr. Theobald was admissible. Even if not, it was cumulative, and not prejudicial. See *In re Estate of Barnes* (1952), 64 Ohio Law Abs. 28 and *Liberty Club* v. *Board of Liquor Control* (1956), 75 Ohio Law Abs. 362.

It is our conclusion that the court did not err in the two respects assigned, the fixing of the date of October 31, 1960, for determining the fair market value, and the admission of the testimony of Mr. Theobald.

No error prejudicial to the appellant Director of Highways appears in the record. The judgment is affirmed.

*Judgment affirmed.*

Kerns, P. J., and Sherer, J., concur.