[Cite as In re Appropriation of Lands of Sproat, 20 Ohio App. 2d 166.]

(No. 3356—Decided April 17, 1969.)

*Mr. James R. Gould,* for appellant Consolidated Foods Corp., Lawson Milk Division.

*Mr. Thomas C. Cecil,* for appellees Benjamin F. Sproat and Helen McK. Sproat.

*Messrs. Patricoff & Wurts,* for appellee Sophia Klein.

CRAWFORD, J. The Ohio Director of Highways appropriated a business property, of which Benjamin F. Sproat and Helen McK. Sproat were the owners of the fee simple title, subject to a land sale contract with Sophia Klein. The director paid $82,500 for the property and has no further interest in the case. The owners, the Sproats and Klein, appellant-lessee Consolidated Foods Corp., Lawson Milk

Division, and others, participated in a hearing before the Court of Common Pleas to determine proper distribution of the fund. Aside from the return of a small amount of prepaid rent, appellant was allowed nothing whatever for its lease. It was from that denial of a share in the distribution that appellant-lessee Lawson now appeals on questions of law.

On May 3, 1960, Lawson entered into a lease for part of the appropriated premises with Sproats' predecessor in title. The term of the lease was for ten years from the beginning of occupancy (about September 1, 1960), at a specified rent. The lease provided lessee with options to renew for two additional terms of five years each, on the same terms and conditions except that the rental on renewals was to be negotiated within a specified maximum.

Paragraph "L" of the lease reads:

"If the whole or any part of the premises shall be taken or condemned by any competent authority for any public or quasi-public use or purpose, causing substantial damage or injury to lessee, then, in that event, the term of this lease, at the option of the lessee, shall cease and terminate. In the event of such termination the lessee herein shall have no claim for damages against any governmental body for termination of said lease."

The lessee has not elected to terminate the lease. On the contrary, it seeks to participate in the distribution on the basis of the unexpired portion of the original term and of two additional five-year terms.

On July 16, 1963, the Sproats acquired the fee simple title by deed from the lessor. On April 30, 1964, Sproats entered into a contract of sale of the premises with Sophia Klein, who has made substantial payments.

On November 7, 1966, the Director of Highways filed his resolution and finding. By that time he had already demolished most of the buildings and improvements in the neighborhood.

There are seven assignments of error. However, the most essential question is whether Lawson's lease shall be valued as of the time of the resolution and finding, with

existing deterioration from demolition and highway construction.

We believe that it is now the settled law of Ohio that the total value for the whole property to be paid by the director must be fixed prior to and independent of the taking and demolition and consequent deterioration or appreciation, as the case may be, caused by the appropriation program. *Mansfield* v. *Balliett* (1902), 65 Ohio St. 451; *Nichols* v. *Cleveland* (1922), 104 Ohio St. 19; *Bekos* v. *Masheter*, 15 Ohio St. 2d 15; *Cleveland* v. *Carcione* (1963), 118 Ohio App. 525; *In re Appropriation, Goldflies* (1969), 18 Ohio App. 2d 116.

In *Bekos,* the syllabus reads:

"Where the value of private property appropriated for public use by the Department of Highways has depreciated due to the activity of the appropriating authority in acquiring other properties in the immediate vicinity and demolishing buildings thereon, causing deterioration of the neighborhood and depreciation of the remaining properties, a court may establish a date of take for the purpose of valuation of the property taken which is reasonably related to such activity of the appropriating authority, although prior in time to the date of trial or the actual taking of possession. (*Cleveland* v. *Carcione,* 118 Ohio App. 525, approved. *Director of Highways* v. *Olrich,* 5 Ohio St. 2d 70, distinguished.)"

This being true, the same principle must necessarily apply to the interests of all the owners of the property taken, one of whom is appellant-lessee, Lawson.

"It has been judicially established that lessees for years or from year to year, holding under a valid devise, grant or lease, have such an interest in the property as to be classed as 'owners' in the constitutional sense, and to be entitled to compensation for the taking of their interest in the property, or to sue for damages or apply for an injunction when an unlawful injury to the property under color of eminent domain is inflicted or threatened. * * *" Nichols on Eminent Domain (Rev. 3 Ed), Section 5.23.

Counsel for the owners in fee contend that the provi-

sions for renewal are of no value and are not to be considered. There is convincing authority to the contrary:

"In determining the compensation to which a lessee is entitled it is necessary to compute the value of the use and occupancy of the balance of the lessee's term, taking into consideration the effect thereon of the lessee's right of renewal, if any, and deducting therefrom the agreed rental which the lessee would have paid pursuant to the terms of the lease.* * *" Nichols on Eminent Domain (Rev. 3 Ed.), Section 12.42(3).

In *Corvington* v. *Heppert* (1952), 156 Ohio St. 411, it was held in paragraph two of the syllabus that:

"A lease of real property for a specified number of years coupled with an option to extend or renew the same for an additional period gives the lease effect as an original present demise for the full term for which it might be made inclusive, contingent on the election to extend or renew."

We do not wish to confuse a lessee's right of renewal with options to purchase. However, we note that counsel for the owners in fee have cited an earlier decision of this court in which a lessee's option to purchase was mentioned briefly and incidentally, and editorial comment thereon was carried as the first paragraph of the headnotes. *State* v. *DeLay* (1959), 87 Ohio Law Abs. 449.

If faced with a question as to the right of lessee to exercise an option to purchase in the face of appropriation, we should give serious consideration to his claim to be treated as an owner, which is supported by such impressive authorities as Nichols on Eminent Domain (Rev. 3 Ed.), Section 5.21(1), and *Cullen & Vaughn Co.* v. *Bender Co.* (1930), 122 Ohio St. 82.

However, there is no option to purchase involved in our present case, and *State* v. *DeLay* is irrelevant.

In the case before us the lease and all its provisions, including the renewal options, continue in full force and effect, in the absence of an election of the lessee to the contrary under paragraph "L" of the lease.

Conjecture as to whether or not the lessee would prob-

ably have exercised one or both of its renewal options is beside the point. It is the *right to elect* which is important, and which may be of value in the absence of appropriation. And whatever value it may have, like the value of the unexpired portion of the original term, must be determined without reference to the effect of the highway construction activities of the condemnor.

Appellant-lessee, Lawson, moved to strike the testimony as to what the market value was after the highway activities began around the year 1962. The testimony related particularly to the time of the hearing on October 13, 1967, and six to eighteen months prior thereto. Such evidence was irrelevant and inadmissible and should have been stricken. The findings of the court, also assigned as errors, based upon all the evidence, including that erroneously received, will fall with it.

The judgment will be reversed and the cause remanded to the Court of Common Pleas for further proceedings according to law.

*Judgment reversed.*

KERNS, P. J., and SHERER, J., concur.