Evans et al., Appellees, *v.* Hope et al., Appellants.

[Cite as Evans *v.* Hope (1984), 12 Ohio St. 3d 119.]

(No. 83-1678—Decided July 18, 1984.)

*Mr. Rocky A. Coss,* prosecuting attorney, for appellees.

*Messrs. Cors, Bassett, Kohlhepp, Halloran & Moran* and *Mr. Robert J. Hollingsworth,* for appellants.

*Per Curiam.* The instant appeal presents two issues: (1) whether the date of take of appellants' property should be earlier than July 1981, the date of actual physical appropriation; and (2) whether appellants have established that their property is of "special use." Both issues relate to the amount of compensation awarded appellants from the appropriation.

## I

Generally, the "date of take" on which the value of property appropriated for public use is determined is the earlier of either the date of trial or the date of actual physical appropriation. *Dir. of Highways* v. *Olrich* (1966), 5 Ohio St. 2d 70 [34 O.O.2d 153]; *In re Appropriation for Highway Purposes* (1958), 167 Ohio St. 463 [5 O.O.3d 149]. An exception to this was recognized in *Bekos* v. *Masheter* (1968), 15 Ohio St. 2d 15 [44 O.O.2d 9], where this court held:

"Where the value of private property appropriated for public use by the Department of Highways has depreciated *due to the activity of the appropriating authority* in acquiring other properties in the immediate vicinity and demolishing buildings thereon, causing deterioration of the neighborhood and depreciation of the remaining properties, a court may establish a date of take for the purpose of valuation of the property taken which is reasonably related to such activity of the appropriating authority, although prior in time to the date of trial or the actual taking of possession. * * *" (Emphasis added.)

Thus, the court may establish an earlier date of take if depreciation is *caused* by the actions or inactions of the appropriating authority. The burden of proof necessarily lies with the property owner to show causation. *Bekos* v. *Masheter, supra.* In *Bekos,* the acquisition and destruction of neighboring structures was the causative factor behind the depreciation of the subject property.

In the case at bar, the causative factor behind any depreciation of appellants' land was the 1980 fire. No evidence has been produced to show a link between any of appellees' actions and any resulting depreciation. Appellants argue that the appellees' inaction in the mid-1970's, which resulted in the 1979 dismissal for want of prosecution, caused the property value to drop since further development was stalled. The speculative nature of this claim, however, renders it insufficient for the degree of proof required.

Thus, *Bekos* is distinguishable from the present case. The purpose underlying the *Bekos* rule is to ensure that fair and just compensation is awarded to the property owner. Justice is not served by making the appropriating authority an insurer for all debilitating occurrences regardless of fault.

The date of take was properly established as July 1981, the date of the actual physical taking.

## II

The second issue concerns the alleged "special use" of appellants' land. Specifically, the appellants were not permitted to introduce evidence at trial of any special use valuation.

In *Sowers v. Schaeffer* (1951), 155 Ohio St. 454 [44 O.O. 419], paragraph three of the syllabus, this court set forth the test for valuation of appropriated property:

"The rule of valuation in a land appropriation proceeding is not what the property is worth for any particular use but what it is worth generally for any and all uses for which it might be suitable, including the most valuable uses to which it can reasonably and practically be adapted." Accord *Langenau Mfg. Co. v. Cleveland* (1953), 159 Ohio St. 525 [50 O.O. 435].

Appellants argue that the testimony of appellant Jack Hope, pertaining to further development plans for the property, should have been admitted in light of the National Register of Historical Places listing.

Having already determined the date of take to be July 1981, the subject property must be valued as of that date. At that time, fire had already destroyed the grist mill and the covered bridge, the two items which undoubtedly were the primary reasons for the inclusion of appellants' land on the National Register. Part of the land was used agriculturally as of July 1981; the residue lay fallow.

The sole evidence to be presented in support of appellants' claim was the lay testimony of appellant Jack Hope. This is not the type or sufficiency of proof envisioned by the *Sowers* court. Speculative, self-serving, unsupported testimony of the property owner will not establish a value which differs from present market value. The National Register listing merely designates the property as having a special *nature*. It is up to the property owner to develop the property's *use*. The property had been opened commercially as a tourist attraction in 1968, but closed down the following year, *three years prior* to any action by or communication from the appellees. Since no perceptible improvement was made to the property since 1969 towards the development of a "special use," appellants' claim is too speculative.

Accordingly, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

W. Brown, Locher, Holmes and J. P. Celebrezze, JJ., concur.

Celebrezze, C.J., Sweeney and C. Brown, JJ., dissent.

Clifford F. Brown, J., dissenting. Because I am convinced that the appropriated property in the instant cause warranted a valuation by the special use method, I dissent.

Several aspects of the land in question justified a valuation according to its special use. First, the property was officially entered into the National Register of Historical Places, a fact which demonstrates its unique nature and valuable potential as a tourist park. Further, the appellants presented evidence concerning their actual plans to convert the property into an attraction for tourists.

Contemplated use may qualify as a special use for valuation purposes. In fact, this court has held that "[i]t is the duty of the court in an appropriation proceeding to afford the property owner the right to fully show the extent and character of the real estate proposed to be taken and its maximum value for any purpose for which its use is available * * *." *Langenau Mfg. Co.* v. *Cleveland* (1953), 159 Ohio St. 525 [50 O.O. 435], paragraph three of the syllabus. Appellants' property had in fact been partially developed as a tourist attraction, and had actually been opened to the public for two seasons, drawing thousands of visitors. Further development was impeded by the county's chronic delays and indecision in its plans for the location and construction of the bridge.

Moreover, if the evidence demonstrates that there is a lack of market data which renders an accurate appraisal difficult to obtain, valuation by the special use method is warranted. See Knepper & Frye, Ohio Eminent Domain Practice (1977) 194, Section 7.18. Appellees' own witnesses testified at trial that the recognized historical character of the property was never considered in arriving at an appraisal figure. It was further conceded at trial that no other property could be found which was comparable to appellants' for its historical features.

Therefore, there existed a demonstrable lack of market data, which necessarily frustrates routine appraisal methods. In such situations, a modified approach is required, such as the method of special use. It is clear that in the case *sub judice,* the usual method of fair market value could not possibly yield an accurate estimation of the worth of appellants' property.

In the interests of justice and fair play, the trial court should have allowed appellants to introduce evidence of the property's special use. Accordingly, I would reverse the court of appeals and remand the cause for further proceedings on the issue of valuation only.

CELEBREZZE, C.J., and SWEENEY, J., concur in the foregoing dissenting opinion.