STATE *v.* DELAY ET, LESSOR-APPELLEES, AND MANES, LESSEE-APPELLANT.

Ohio Appeals, Tenth District, Franklin County.

No. 6223.   Decided December 1, 1959.

*Mr. George Tyack* and *Mr. G. Arlowe Bryant,* for lessor-appellees.

*Mr. Paul Tague* and *Mr. J. Paul McNamara,* for lessee-appellant.

*Mr. Mark McElroy,* attorney general, for Director of Highways.

(WISEMAN, P. J., CRAWFORD and KERNS, JJ., of the Second District, sitting by designation in the Tenth District.)

450

WISEMAN, P. J. This is an appeal on questions of law and fact from a judgment of the Common Pleas Court of Franklin County apportioning between the lessor and lessee the jury award returned in an action to appropriate land for highway purposes.

The property was owned by the DeLays, hereinafter referred to as the lessor, who on June 19, 1950, leased the property to Manes, hereinafter referred to as the lessee, for a period of ten years. At the time of the appropriation the lessee was in possession under the lease, which then had twenty-six months more to run.

The total compensation awarded by the jury was $44,-500.00. An award of $20,000.00 was given for the value of the land and $24,500.00 for the value of the structures.

The lessee was a party to the appropriation proceedings and filed a petition for apportionment of the award, between the lessor and lessee. Some additional evidence was submitted to the court after the jury returned its verdict. The appellant, the lessee, elected to submit to this Court, in conformity to Rule V, Section A, paragraph 2 of the Rules of the Courts of Appeals, all the evidence received in the trial court taken before the jury and the evidence presented at the subsequent hearing.

At the subsequent hearing the lease was presented in evidence, certain pertinent facts were stipulated by counsel, and the testimony of several witnesses was taken.

At this hearing it developed that in 1950 when the lease was executed the property was occupied by two old residences which were torn down by the lessee, and a considerable amount of dirt was removed to bring the level of the land to street grade. The lessee erected thereon a drive-in restaurant with all modern equipment and facilities, he excavated a basement, built a retaining wall, provided for driveways across the curb and sidewalk, installed underground sewers and wiring, blacktopped the entire parking area, built barricades and fences and erected several sign posts. The lessee was operating the restaurant at the time of the appropriation.

The lease provided for the payment of $175.00 per month rental. The evidence was undisputed that the lessee would be compelled to pay a rental of $400.00 per month for a comparable property for the remainder of the term. It is conceded that lessee is entitled to the sum of $225.00 per month for the remainder of the term, or a total of $5,850.00 as compensation for the termination of the lease.

The lease contains certain clauses which are pertinent and significant, as follows:

"It is agreed that lessee shall have the right to remove, alter, remodel, sell or destroy any and all buildings now located upon said premises and shall also have the right to erect and maintain upon said premises at his own expense, and in his sole discretion, such additional buildings as he shall erect.

"It is further agreed that Lessor shall pay taxes covering the land hereby leased, provided however, that should lessee erect any further or additional buildings upon said premises during the term hereof, the lessee shall, in addition to the monthly rental provided, pay also such taxes as shall be assessed against leased premises and allocable to any such building or buildings erected by lessee upon said premises.

"At any time during the term hereof, but in no event before June 26, 1955, lessee shall have the right to purchase the premises leased hereby at a consideration of Twenty four Thousand Dollars ($24,000.00) said purchase price to be paid in cash upon delivery to lessee, by lessor, of a warranty deed and abstract of title showing a merchantable title to said premises in lessor."

\* \* \*

"The buildings that are hereafter erected upon said premises by the lessee shall be and remain the property of the lessee and at the termination of this lease or anytime prior thereto, he may remove, sell or dispose of said buildings, and they shall at all times be and remain his property."

In strict conformity with the terms of the lease the lessee removed all structures on the property at the time the lease was executed. He erected new buildings and structures thereon. The lessee paid the expense of the removal of the old and the erection of the new buildings and structures. The evidence

shows that the lessee was assessed for taxes on the tax value of all new buildings and structures. The lessor paid the taxes on the bare land. By the terms of the lease, the lessee was the owner and had the right to remove all new buildings and structures erected by him. At no time did the lessee attempt to exercise the option to purchase the property as provided in the lease.

The lessor and the lessee agreed for tax purposes that the lessee should be regarded the owner of not only the buildings in which the restaurant was operated but that all other so-called site structures should be considered as property of the lessee. At the last hearing the deputy auditor testified that the sewers, asphalt pavement and other site improvements were included in the building value for tax purposes on which the lessee paid the taxes; that the lessor was taxed on bare land. Consequently, by their acts and conduct the lessor and lessee have interpreted the word "buildings" as used in the lease to include site structures.

The lessor contends that he is entitled to the full amount awarded for structures on the ground that certain site structures could not be removed, and further that unless removed by lessee, the structures would revert to lessor. The lessee contends that he is entitled to the total amount awarded for structures on the ground that such structures were paid for by lessee, that he was the sole owner of the structures and had the right of removal.

The case law in Ohio with respect to the rights of the parties under the factual development in the instant case is not well settled. Cases arising under the ordinary lease where the lessee is not given the right to erect buildings at his own expense and the right of removal, do not furnish a precedent and are of little or no help in resolving the question presented here. The cases of the *Queen City Realty Co.* v. *Linzell, Director,* 166 Ohio St., 249, 142 N. E. (2d), 219 and *Frownfelter* v. *Graham,* 160 Ohio St., 309, 54 N. E. 264, are not in point.

In the instant case three factors are present which are significant and controlling. (1) Erection of buildings at the expense of lessee; (2) Retention of ownership in buildings and structures by lessee; (3) Right of removal of such build-

ings and structures by lessee. Text writers on the subject of eminent domain and the courts in other jurisdictions have established and approved the principle that where the lessee erects buildings and has the right of removal, the lessee, on the apportionment of an award, is entitled to that part of the award which has been allowed for the value of structures and buildings.

The lease being terminated by operation of law, the lessee is not entitled to any compensation for his option to purchase which had not been exercised.

In Nichols on Eminent Domain, Third Edition, Vol. 2, page 203, Section 5.81, the text is as follows:

"It frequently happens that, in the case of a lease for a long term of years, the tenant erects buildings upon the leased land or puts fixtures into the building for his own use. It is well settled that, even if the buildings or fixtures are attached to the real estate and would pass with a conveyance of the land, as between landlord and tenant they remain personal property, and, in the absence of a special agreement to the contrary, may be removed by the tenant at any time during the continuation of the lease provided such removal may be made without injury to the freehold. This rule is, however, entirely for the protection of the tenant and cannot be invoked by the condemning party. If the buildings or fixtures are attached to the real estate, they must be treated as real estate in determining the total award, but in apportioning the award they are treated as personal property and credited to the tenant."

In Vol. 18, American Jurisprudence, page 894, Section 254, the text is as follows:

"Ordinarily an agreement between landlord and tenant that the tenant shall have the right to remove improvements placed on the premises by him does not inure to the benefit of the condemner so as to authorize the taking of a beneficial use of the property from the tenant without making him a fair compensation for the property as a whole. Primarily the property is to be valued as a whole without regard to who put the buildings or fixtures there, or the right to remove them. But the right of the tenant to remove buildings or fixtures becomes material in apportioning a condemnation award between landlord and tenant."

454

In the case of *United States* v. *Seagren*, 75 A. L. R., 1491, 50 F. (2d), 333 (District of Columbia Court of Appeals) where the lessee built and conducted on the property a gasoline filling station, with the usual equipment of such an establishment, consisting of buildings, a work shop, underground tanks for gasoline and oil, with pipes, pumps, and other paraphernallia for the operation of the establishment, the lot being covered with a concrete surface or roadway and enclosed by an iron fence, and where the lease gave the tenant authority to erect buildings and other structures, etc., and to remove the same, the court held:

"The fact that a tenant, under the terms of the lease, has the right, upon the termination of his tenancy, to remove structures placed by him upon the leased premises, does not affect his right to claim payment of the present value thereof upon condemnation of the land."

The court in its opinion on page 1494 of Volume 75 A. L. R. cites with approval the quotation set forth above from Nichols on Eminent Domain. At the end of this case as reported in Vol. 75 A. L. R. there appears an extensive annotation on the subject of "Right of tenant to remove buildings or other fixtures as affecting tenant's right to compensation in respect to such improvements in condemnation proceedings." In the headnote on page 1495 is found this statement:

"Without question the tenant in the reported case (*United States* v. *Seagren, ante,* 1491) would have suffered a pecuniary loss if he had been compelled to protect his ownership of the filling station equipment, consisting of divers tanks, pipes, pumps, and other paraphernalia, by removing the same from the premises and making what use he could of the equipment on other premises. Even though he might ultimately have had to vacate and salvage what equipment he could from the station, it was to his advantage to maintain his property in the condition in which it was installed so long as he had a right to occupy the premises."

In the annotation numerous cases are cited supporting the rule laid down in *United States* v. *Seagren.* In *People* v. *Klopstock,* 151 P. (2d), 641 (Supreme Court of California) where the tenant on the leased premises operated an asphalt plant and appurtenant facilities the court held:

"Fixtures are regarded as 'personalty' as between tenant and owner of the land, so far as right of removal is concerned, but, as between tenant and condemning party, they are regarded as part of 'realty' for purpose of making compensation, so long as they remain fixtures, and where by exercise of right of eminent domain they are destroyed or injured in value, damages may be recovered therefor by the tenant."

In *City of Ladue* v. *St. Louis Public Service Co.*, 168 S. W. (2d), 966 (Missouri), where the tenant conducted a restaurant on the premises and was given the right to remove the buildings erected by the tenant, the court in the fifth paragraph of the syllabus held:

"Tenant having right under lease to remove buildings erected by her on land subsequently condemned by city was entitled to market value of buildings ascertained on the basis of what they were worth for the use to which they were devoted as they stood upon condemned land, and her participation in condemnation award could not be limited to salvage value or reduced by the cost of moving buildings."

In *Queensboro Farm Products, Inc.* v. *State of New York*, 161 N. Y. S. (2d), 989 (Court of Claims of New York), where the tenant owned a large building and other structures constituting a milk receiving plant located on leased lands, the court on page 994 said:

"Claimant leased the land, but owned the improvements and fixtures thereon, under a lease giving to it the authority to remove such improvements and fixtures at the expiration of the lease, provided the rent had been paid and the covenants of the agreement complied with. The rent had been paid and the covenants complied with and claimant's lease had not expired at the time of the appropriation. The claimant is entitled to be paid for its improvements and fixtures, which it had a right to remove at the end of the lease, and/or the consequential damages thereto."

In the case of *In re Appointment of Park Commissioner*, Vol. 1, N. Y. Supp., page 763, where the lessee erected buildings and appliances for the purpose of conducting an ice house, the court held, in the second and third paragraphs of the syllabus, as follows:

"2. In proceedings to condemn, for a public park, land in possession of a lessee for a term of years, where the lessee has erected buildings on the land which would be part of the realty if the tenants owned the fee, the measure of damages to the lessee is the value of the buildings, though the lease stipulates that the lessee may remove the buildings at the end of the term.

"3. In such a case it is proper to deduct the sum awarded the tenants for their leasehold interest from the sum awarded the owners as the value of the soil, as the value of the land is all that can be awarded the owner, and the leasehold forms a part of it."

On pages 766 and 767 the court in discussing the amount of compensation to be allowed the lessee said:

"It is at once apparent that the buildings torn down are of much less value to the tenant than when standing. As they are now they may always remain; and thus the tenant, by this covenant, obtains the highest value contemplated by him at the time of the execution of the lease. When he is forced to part with his right, justice requires that he shall be compensated for all his damage as near as may be. Had he obtained title to the land, then no question would have arisen but that the measure of damage would be the value of the whole. As he is cut off from such right, or the possibility of it, the true measure of his damage would seem to be the value of his improvements, in addition to his leasehold interest. Such rule places the city in the precise position of the tenant. No reported case in this state is called to our attention, and none found after diligent search, where the right of the tenant to receive compensation for permanent improvements made by him upon leased land, taken by right of eminent domain, has been denied."

In the case of *People* v. *Klopstock, supra,* the court in its opinion on page 644 quoted from McAdam, Landlord and Tenant, fifth edition, section 10, pages 23-25, as follows:

" 'The State's appropriation of land, unless qualified when made, is an appropriation of all that is annexed to the land whether classified as buildings or as fixtures. * * * Trade fixtures are regarded as personalty as between the tenant and owner (of the land) so far as the right of removal is concerned,

but as between the tenant and the condemning party they are regarded as a part of the realty for the purpose of making compensation, so long as they remain fixtures, and where by the exercise of the right of eminent domain they are destroyed or injured in value, damages may be recovered therefor by the tenant. The award made for such fixtures in condemnation proceedings therefore belongs to the tenant. * * *

" 'Where there is a condemnation of land, and also a destruction of a valuable plant erected by a tenant thereon, the value of the plant, even though not adding to the value of the land, must be awarded to the tenant. It is proper * * * in condemnation proceedings, to make separate awards not only for the fee of the land, but to the lessee who has erected business buildings and a plant thereon.' "

It is well established that the right of eminent domain requires that the owner of property taken should be paid a just compensation for what is taken from him. The question is: what has the owner lost? The owner may be the owner in fee or the owner of a lesser estate such as the leasehold estate. What the owner of a lease loses by the appropriation proceedings should not inure to the benefit of the fee. The owner of the leasehold estate should be compensated for what he loses under the lease. In the instant case the lessee was entitled to be compensated for his loss as his buildings and structures existed at the time of the appropriation and as used in his operation of his business of a drive-in restaurant.

Under the terms of the lease the lessee had the right to remove buildings and structures. Having granted to the lessee the right of removal of said buildings and structures the lessee would have had the right to remove the same even though it would have caused some slight damage to the real estate as it existed in the operation of the restaurant. The lessee is entitled to be compensated for such buildings and structures which he had the right to remove. In the instant case the lessee, in conditioning the property for the drive-in restaurant, was put to some expense in the removal of dirt and in lowering the grade of the property which does not enter into the award made for the land or for the structures. It appears from the record that the award of $24,500.00 for structures was for

structures and buildings which the lessee under the terms of the lease was given the right to remove. In equity and justice the lessor in this case should have that portion of the total award which would represent the value of the bare land without any improvements, or $20,000.00 less $5,850.00, the value of the unexpired term of the lease.

In our judgment the great weight of authority supports the contention of the lessee that he is entitled to have apportioned to him the $24,500.00 awarded by the jury for structures as well as $5,850.00 which has been conceded to be the value of the unexpired term of the lease, or to have apportioned to him from the total award of $44,500.00 the sum of $30,350.00.

An entry may be drawn accordingly.

CRAWFORD and KERNS, JJ., concur.