City of Cleveland *v.* Zimmerman, Executor, et al.

(No. 723918—Decided December 12, 1969.)

Probate Division, Common Pleas Court of Cuyahoga County.

*Mr. Sam Lerner,* for plaintiff.

*Mr. H. Stephen Madsen* and *Messrs. Baker, Hostetler & Patterson,* for defendant Foster & Foster, Division of Metromedia, Inc.

BARTUNEK, J. This matter comes before the court upon an appeal from the decision of a referee apportioning a part of a landowner's appropriation award to a billboard advertising sign company, which had two billboards erected upon the otherwise vacant property that was taken.

The central question to be considered herein is to what extent can the billboard advertising sign company participate in the award as compensation for damages as the result of the termination of its leasehold interest?

Setting forth the relationship of the parties is a lease which was originally entered into on September 10, 1962, by Harold A. Paxson, owner of the vacant property located on the northeast corner of Ridge Road and Orchard Grove Avenue in the city of Cleveland, and by the Packer Corporation, a billboard advertising sign company. Paxson is now deceased and it is his estate which is considered to be the landowner herein. The Packer Corporation has been acquired by the Foster and Kleiser Division of Metromedia, Inc., which is the billboard advertising sign company herein.

The original lease was for a period of one year, but the tenant was given the option to renew each year for an additional one year by continuing in possession and by the payment of the annual rent of $60 within sixty days of the renewal date.

Right to terminate the lease was afforded to the landowner by giving the tenant thirty days notice of the erection of any permanent improvement, and returning to the tenant the unearned portion of the rent which had been paid in advance. Right to terminate the lease was given to the tenant when, in its opinion, the signs had become obscured or the value of the location for advertising purposes had become diminished. Under these circumstances, the unearned portion of the rent would be returned to the tenant.

Both parties agreed that the billboard advertising signs "shall always remain the personal property of and may be removed by the Tenant" at the termination of the lease.

In September of each year following the signing of the lease, the billboard advertising sign company continued the lease in existence by remaining in possession of the property and paying the $60 rental as required. In 1966, Metromedia removed one of the three signs on the property and caused the remaining two billboard signs to be illuminated at night.

The parties maintained their relationship without incident until September 1, 1967, when, Metromedia, unaware that Paxson had died on December 23, 1966, sent the $60 annual rental check to him and continued in possession under the terms of the lease.

Subsequently, after learning that the city of Cleveland intended to appropriate the property, in February 1968, the attorney for Paxson's estate advised Metromedia that the lease was terminated and returned the original $60 check which had been sent to Paxson in September, and also advised the company to remove its billboard advertising signs from the premises. Metromedia promptly replied that the lease was not capable of termination in that manner and remained in possession.

After negotiation with the city, Paxson's estate settled the appropriation matter which had been filed on June 13, 1968, and an agreed jury verdict was entered into on June 28, 1968, awarding the landowner $65,400 for the taking of this property.

Although both parties agreed that the date of appropriation for the purpose of determining the billboard advertising sign company's share of the award was July 19, 1968, they sharply differed as to the extent of that share of the award.

The estate of Harold A. Paxson contends that the lease had expired, but further states that even if it were found to be binding, the most that Metromedia would be entitled to is $5.98, which is the value of the difference between the fair market rental of the location today and the

$60 rental payable under the lease, prorated for the remaining fifty-two days of the term of the lease.

Metromedia claims that it is entitled to a share of the appropriation award as follows:

| | |
|---|---:|
| Value of leasehold interest until the end of the term | $ 5.98 |
| Value of loss of profits from location until end of term | 270.00 |
| Fair market value of the two billboard advertising signs | 5000.00 |

Total - $5275.98

Before we can consider the value of the leasehold interest, we must first determine if a valid lease did exist between the parties. And we believe that it did. Metromedia did everything required of it on September 1, 1967, and properly acted to extend the lease for another year. The mere act of returning the check some five months later did not in any way terminate the lease.

Hence, there was a valid lease existing between the parties at the time of the appropriation action, and Metromedia is entitled to participate in the appropriation award to be compensated for its damages. But what is the extent of that participation? That is the question we must now seek to resolve.

To support its contention that the city appropriated all of the interests in the land taken, thus entitling it to compensation for the value of the billboard signs, Metromedia cited Section 163.01, Revised Code, and *In re Appropriation by Supt. of Public Works,* 155 Ohio St. 454, and further claimed that a lease is a valuable interest or estate or land, by citing *Queen City Realty Co.* v. *Linzell,* 166 Ohio St. 249; *In re Appropriation for Highway Purposes,* 169 Ohio St. 309; *Preston* v. *Pecsok,* 93 Ohio Law Abs. 331; and *State* v. *DeLay,* 87 Ohio Law Abs. 449.

The court agrees that a lease is a valuable interest in land which is appropriated in this proceeding. Further, having found that there was a valid lease in existence between the estate and Metromedia at the time of this action,

the court finds that Metromedia is entitled to compensation for the taking of this valuable property right.

Determination of the value of a leasehold interest was set forth in the *Queen City Realty Co.* v. *Linzell, supra,* a 1957 case which seemed to limit the value of this interest as being the difference between the reasonable rental value, being in this case $102 per year, and the actual rental required, being in this case $60 per year, or a difference of $42 per year prorated over the remaining fifty-two days of the lease, or $5.98.

But, a later case, in 1957, *In re Appropriation for Highway Purposes* A. K. A. *Frownfelter* v. *Graham, supra,* seems to inject another element of value into consideration, namely the value of the use of the property leased, in its holding which stated:

"2. In sharing the condemnation award, a lessee of such property is entitled to the market value of the right to use the property for the unexpired term over and above the amount of rent he is obligated to pay under the provisions of his lease.

"3. In evaluating the leasehold interest, it is proper to consider the rental the lessee is required to pay, the reasonable value of the use of the realty for the unexpired term of the lease, any premium paid by the lessee for the lease in addition to the subsequent rental, and any increase or decrease in the market value of the realty during the term of the lease."

This thinking is also reflected in the 1963 case of *Preston* v. *Pecsok, supra,* which held:

"1. The measure of the amount to be apportioned to a lessee of premises a portion of which has been appropriated, is the difference between the market value of the leasehold estate before the taking, and the market value of such leasehold estate, without the part taken, for the duration of the lease.

"2. In determining the amount to be apportioned to a lessee from an appropriation award, it must be considered that a leasehold interest in real estate may have a substantial value, notwithstanding that it involves a liability to pay rent.

"3. In determining what portion of compensation awarded for the taking of part of a tract of land and damages to the remaining part, shall be allotted to a lessee which had improved the land with structures which it could remove at the end of its term, there must be considered, for the period of the lease, (1) the loss of the value of use of the part taken, (2) the diminished value of the use, if any, of the remaining part, as improved, and (3) all damages, if any, to the buildings and their usability because of the reduction in size."

Therefore, since the billboard advertising signs were rented until September 1968, for $103 per month, less the posting costs, illuminating costs, rental costs, and administration costs, amounting to $35 per month, it would appear that Metromedia would additionally be entitled to the net rental of $68 per month for each billboard throughout the remainder of the term, or a total sum, for this purpose, in the amount of $224.

Next, Metromedia vigorously contends that it is entitled to the fair market value of the billboard advertising signs erected on the premises by it. Citing Webster's Dictionary and *Concrete Silo Co.* v. *Warstler,* 50 Ohio App. 334, Metromedia claims that billboard advertising signs are structures, and since they are part of the realty by virtue of being structures, Metromedia says it should be paid for them.

And even if the billboard advertising signs are not structures, Metromedia says, certainly they are fixtures as defined by *Teaff* v. *Hewitt,* 1 Ohio St. 511, and *Exchange Leasing Corp.* v. *Aegen, Inc.,* 7 Ohio App. 2d 11, because of their degree of annexation to the land. This view of billboard advertising signs being regarded as compensable fixtures, Metromedia says, has been followed in *George F. Stein Brewery, Inc.,* v. *State,* 103 N. Y. S. 2d 946; *Rochester Poster Advertising Co., Inc.,* v. *State,* 213 N. Y. S. 2d 812; and *Buffalo* v. *Michael,* 262 N. Y. S. 2d 441.

The estate of Harold A. Paxson does not agree that billboard advertising signs are anything but personal property. In order to be considered fixtures, Paxson's es-

tate claims that such property, according to *Teaff* v. *Hewitt, supra,* must have the following requisites:

"1st. Actual annexation to the realty, or something appurtenant thereto.

"2nd. Application to the use, or purpose to which that part of the realty with which it is connected is appropriated.

"3rd. *The intention of the party making the annexation to make a permanent accession to the freehold.*" (Emphasis added.)

*Exchange Leasing Corp.* v. *Aegen, Inc.,* Paxson's estate points out, clearly hinges on the parties intentions where in the holding in that case the court says: "* * * the parties are *clearly shown to have intended* the carpeting to become a fixture * * *." (Emphasis added) and Judge Skeel, in his opinion in that case, citing the *Teaff* v. *Hewitt case,* says "the change from the rule that the degree of annexation was a deciding factor to the cases that now hold that the intention of the parties expressed or implied, is to be considered as a primary factor * * *."

Another case pointing out this important distinction is the *Holland Furnace Co.* v. *Trumbull Savings & Loan Co.,* 135 Ohio St. 48, a 1939 case, which held:

"2. A fixture is to be determined by the consideration of a combination of the following tests:

"(1) To become a fixture it is essential that the chattel in question be annexed to some extent to realty.

"(2) The chattel must have an appropriate application to the use or purpose to which the realty to which it is attached is devoted.

"(3) *There must be an actual or apparent intention upon the part of the owner of the chattel in affixing it to realty to make such chattel a permanent part of such realty.*" (Emphasis added.)

Even in the *Concrete Silo Co.* v. *Warstler, supra,* cited by Metromedia, the court said on page 337 of its opinion: "* * * it is without doubt the law that where the rights of third parties do not intervene, the intention of the parties is a dominating factor."

And it is with these views that we must agree. There never was any intention of either party that these billboard advertising signs would be anything but personal property. The lease classifies them as personal property, Metromedia has the right to remove them as personal property, and the right of the landowner to have them removed as personal property, all strongly indicate they are personal property.

In the New York cases cited by Metromedia where billboard advertising signs were held to be compensable fixtures, the measure of damages was the value of the land as enhanced by the affixed sign. Here there has been no showing of any enhancement of the value of the land or that the jury verdict gave any additional value to the land because of the billboard advertising signs. Indeed, if anything, these signs were a burden to the land which prohibited the owner from installing permanent improvements without first giving notice and allowing reasonable time for Metromedia to remove its personal property.

Therefore, it is the finding of this court that the billboard advertising signs are personal property, entitled to be removed by the owner thereof, and that they do not constitute structures or fixtures which are entitled to a share in the appropriation award for the taking of this property.

Metromedia is therefore entitled to receive as its share in the appropriation award:

| | |
|---|---|
| As value of the leasehold interest | $ 5.98 |
| As loss of income for the remainder of term of lease | 224.00 |

Total - $229.98

less $60 due on the lease for the term of the lease from September 10, 1967 to September 10, 1968.

The referee's decision, insofar as it conforms to this decision is sustained, and insofar as it does not, it is reversed.

*Judgment accordingly.*