CITY OF LAKEWOOD *v.* ROGOLSKY ET AL.

(No. 719117—Decided December 12, 1969.)

Probate Division, Common Pleas Court of Cuyahoga County.

*Mr. Seymour H. Lesser,* for defendant Rogolsky.

*Mr. H. Stephen Madsen, Messrs Baker, Hostetler & Patterson,* for defendant Foster & Kleiser, Division of Metromedia, Inc.

BARTUNEK, J. This matter comes before the court upon an appeal from the decision of a referee apportioning a share of a landowner's appropriation award to a billboard advertising sign company which had two billboards erected on the premises taken.

Relationship between the parties originated from a lease between I. D. Rogolsky, owner of the property, and Central Outdoor Advertising Co., predecessor to the Foster and Kleiser Division of Metromedia, Inc., the defendant herein. The lease, executed in 1952, was for a five-year term and renewable thereafter on an annual basis at the option of the billboard advertising sign company by continuing in possession and paying the rental within sixty days of the due date.

The billboard advertising sign company had the right to terminate the lease whenever, in its opinion, the location lost its value for advertising purposes or the signs became obscured, but the owner of the property had no right to terminate the lease. Both parties, however, agreed that the billboard advertising signs were to always remain the personal property of the billboard advertising sign company and could be removed by it upon a termination of the lease.

Annual rental was first established at $800.00 per year, but later was negotiated down to $400.00 per year because of the loss of two billboard sites on the location. The original lease was in writing, duly recorded, and submitted as evidence herein, but no written evidence of the negotiated change in the annual rental was submitted in this case. However, neither party has challenged the validity of the $400.00 annual rental figure or the right of

Metromedia to remain in possession until the time of the appropriation action.

Remaining in possession from 1952, the billboard advertising sign company, on May 1, 1968, payed $400.00 to Rogolsky for the one-year period from May 15, 1968, to May 14, 1969, and continued to maintain its two illuminated billboard advertising signs on Rogolsky property.

In the meantime, the city of Lakewood, on March 14, 1968, had filed the appropriation action herein, and, after a jury award of $16,850.00 was obtained for the taking of the property on June 7, 1968, the certificate of appropriation was issued by the County Auditor on August 19, 1968. Metromedia now claims a share of that award as compensation for the value of its leasehold interest and for the fair market value of its signs.

The billboard advertising signs are two side by side illuminated billboards, each 12 feet high and 25 feet long, anchored to the ground by six, seven feet long augers and each embedded in concrete pillars of approximately three feet by three feet entirely sunken in the ground. In good condition, the billboard advertising signs have a remaining life use of approximately twenty-five years and would cost $6,280.00 to reconstruct.

The two panels were rented during the period of the last lease renewal for $107.00 per month, upon the basis of a one-year contract for one panel and a renewing three-month contract for the other panel, which, according to the testimony, was rented 80% of the time during the last two-year period immediately preceding the appropriation action.

Cost of maintaining each billboard advertising sign included a posting charge of $15.00 per month and an illumination charge of $9.00 per month. The lease cost in the replacement of these signs would be $1,007.00, and the replacement cost of the two billboards was $6,800.00. However, Metromodia did admit that the present lease rental of $400.00 per year for this site was excessive and that it would not pay more than $140.00 to $150.00 per year for this location, if it were to negotiate the lease at the time of the appropriation action.

Metromedia claims that it is entitled to the value of the leasehold interest in this property from August 19, 1968, the date the certificate of appropriation was issued, to May 14, 1969, the date of the expiration of the lease. Subtracting the cost of the posting charge and the illumination charge from the gross rental received, Metromedia avers that it should receive as part of its share of the appropriation award $1,384.67, or 8-26/31 of the total net sum, as calculated above, which it would othewise have been able to derive from the rental of the billboard advertising signs.

The owner of the property asserts that Metromedia should receive nothing in this regard for the reason that the billboard advertising signs remained erected and income-producing personal property of the billboard advertising sign company after the certificate of appropriation was filed and throughout the remainder of the term of the lease. Hence, the landowner reasons, the billboard advertising sign company has lost no income and the value of the leasehold interest, the lease having run its course, is zero.

In addition to its claimed value for the leasehold interest, Metromedia asserts that the action of the city was an appropriation of all of the interest in the land and thusly was an actual taking of the two billboard advertising signs which are valued at $6,800.00 plus the replacement cost of the lease, valued at $1,007.00, or a total fair market value of $7,807.00.

Rogolsky, however, asserts that the billboard advertising signs were not actually appropriated, inasmuch as the billboard advertising sign company had the right to remove these signs at any time, and further that the billboard advertising sign company and the owner had agreed that these signs were always to remain personal property of the billboard advertising sign company, and hence not capable of being appropriated in an action such as this which takes only real property or fixtures, and not personal property.

The questions involved herein are: (1) Is there a taking of the leasehold interest of Metromedia in this

action?; (2) Is there a taking of the billboard advertising signs?; and (3) What share of the appropriation award is due to Metromedia for these takings, if any?

There can be no doubt but that the law of Ohio definitely states that an eminent domain action clearly appropriates all interests in land, and that a lease is a valuable interest in land. *In re Appropriation,* 155 Ohio St. 454; *Queen City Realty Co.* v. *Linzell,* 166 Ohio St. 249; *In re Appropriation for Highway Purposes,* 169 Ohio St. 309; *Preston* v. *Pecsok,* 93 Ohio Law Abs. 331; and *State* v. *DeLay,* 87 Ohio Law Abs. 449.

Ignoring for the moment that there is no written lease between the parties and further ignoring the fact that Metromedia continued in possession and continued receiving rentals from the use of its signs as advertising media, we must look to the *Queen City case,* where it is clearly stated that a leasehold has value only when the reasonable value of the lease exceeds the rental to be paid for the real estate so leased (see 166 Ohio St. 250).

And in this matter, such is not the case. Metromedia's own testimony clearly sets forth that the rental required to be paid under the lease arrangement between the parties is excessive for the location being used. Since that is the fact, the leasehold interest, instead of having a value to the billboard advertising sign company, actually becomes a burden under these circumstances, and therefore Metromedia is entitled to no share of the appropriation award in compensation for its undesirable lease.

In addition, although Metromedia vigorously contends otherwise, it cannot be in any way just for the advertising billboard sign company to be compensated for any value of its leasehold taken, while at the same time it still enjoys substantial income from the use of these signs, which the appropriating authority apparently has not required to be removed.

In other words, Metromedia cannot claim funds from the appropriation award because of loss of income from the sign location on one hand, and then collect rental income from its advertisers for the use of the same location during the same period on the other hand.

Next we turn to the fair market value of the billboard advertising signs alleged to be taken under this appropriation action. Metromedia contends that it is entitled to not only the replacement costs of the signs, but the replacement cost of the lease, as well, and computes this latter figure as part of the fair market value of these billboard advertising signs.

This contention of compensation due for the lease replacement is utterly without foundation in Ohio law, and the court can find no citations to support this view. Indeed, Metromedia has cited none from any jurisdiction. Therefore, no compensation, under any circumstances, can be allowed for the replacement cost of the lease.

However, should the billboard advertising signs be considered to be part of the realty appropriated under this action, the billboard advertising sign company would be entitled to share in the appropriation award to the extent that the fair market value of these signs was made a part of the award.

To this end, Metromedia contends that *State* v. *DeLay*, 87 Ohio Law Abs. 449, a 1959 case, holds that the lessee is entitled to compensation for these structures or improvements when, as under the *DeLay case*, the structures or improvements were: (1) Erected at the lessee's expense; (2) The lessee retained ownership; (3) The lessee had the right to remove.

However, in the *DeLay case*, the structures referred to were buildings, driveways, and sewers. And these are not comparable to advertising billboard signs.

To further advance its argument, Metromedia contends that billboard advertising signs are structures similar to the silo in the *Concrete Silo Co.* v. *Warstler*, 50 Ohio App. 334. But, in the *Concrete Silo Co. case*, the concrete silo was erected as a part of the barn, and its removal would have left a large hole in the ground and open space in the side of the barn. The small holes that may remain after the removal of the signs here in question, are not in any way comparable to the excavation left by the removal of a silo.

Recognizing the weakness of this argument, Metro-

media contends that even if the billboard advertising signs are not structures, then they are fixtures, which cannot be moved without injury to the realty. To substantiate this argument, Metromedia cited *Teaff* v. *Hewitt*, 1 Ohio St. 511, the landmark case defining fixtures in Ohio, and *Exchange Leasing Corp.* v. *Aegen, Inc.*, 7 Ohio App. 2d 11, which constituted carpeting in an apartment building as a fixture.

In both of these cases, however, as well as the *Concrete Silo Co.* v. *Warstler, supra*, it is clear that the intention of the parties becomes a dominating factor in determining whether or not property is to be considered as a fixture or as a personal property.

*Teaff* v. *Hewitt* held:

"A fixture is an article which was a chattel, but which, by being affixed to the realty, became accessory to it and parcel of it.

"The true criterion of a fixture is the united application of the following requisites, to-wit:

"1st. Actual annexation to the realty, or something appurtenant thereto.

"2nd. Application to the use, or purpose to which that part of the realty with which it is connected is appropriated.

"3d. *The intention of the party making the annexation to make a permanent accession to the freehold.*" (Emphasis added.)

*Exchange Leasing Corp.* v. *Aegen, Inc.*, held:

"2. Where, as a part of the negotiations seeking a construction loan to finance the construction of an apartment building, the owner (builder) includes in his 'estimated cost breakdown' furnished the loan company an estimated amount for 'carpet,' and where the mortgage deed includes carpets and other floor covering in describing the property mortgaged, the parties are *clearly shown to have intended* the carpeting to become a fixture and, therefore, a part of the security for the mortgage." (Emphasis added.)

The *Concrete Silo Co.* v. *Warstler case* referred to intention again, when, on page 337, it set forth:

"It is without doubt the law that where the rights of third parties do not intervene, *the intention of the parties is a dominating factor.*" (Emphasis added.)

In the instant case, it is clear what the intention of the parties was. In the lease itself, originally establishing the rights of the parties, it is clearly stated that the billboard advertising signs shall always remain the *personal* property of the Metromedia. Common knowledge of any landowner, or indeed any high school graduate, would indicate that billboard advertising signs are never intended to become a permanent accession to the freehold, but that they are mobile and readily dismantled when their usefulness at that particular location is no longer valuable.

Further, billboard advertising signs do not in any way enhance the value of the property on which they are located and, if anything, become a burden, rather than an addition to the value of the property. Such was the case here.

However, Metromedia calls our attention to a series of New York cases, which seem to hold that billboard advertising sign companies are entitled to a share of the appropriation award when the signs are taken in an eminent domain action.

*George F. Stein Brewery Co.* v. *State*, 103 N. Y. S. 2d 946, a 1951 New York State Court of Claims case held:

"1. Where lessee's advertising signs, erected under space contract, were so annexed to appropriated land that dismantling for removal destroyed their value, except for salvage, the signs were fixtures, and lessee was entitled to compensation for appropriation thereof, though as between lessee and lessor the signs were chattels.

"4. Where lessee's advertising signs were annexed to land appropriated by state, correct measure of lessee's damages for appropriation of signs was the value of the land as enhanced by the affixed signs."

*Rochester Poster Advertising Co.* v. *State*, 213 N. Y. S. 2d 812, a 1961 New York State Court of Claims case held:

"6. Appropriation of land required compensation for advertising signs removed on order of state, though they

were chattels as between landowner and advertising company.

"8. In proceeding for compensation for advertising signs removed from land condemned on order of state, removal costs could not be allowed, but would be considered in allowance of fair cash value of signs."

*City of Buffalo* v. *Michael*, 262 N. Y. S. 2d 441, a 1965 New York Court of Appeals case held:

"1. Tenant is entitled to compensation for condemnation of fixtures annexed to real property whenever condemnor, in taking realty, destroys leasehold interest of tenant, even though fixtures remain, in consequence of agreement between parties, personal property of tenant with right in latter to remove them upon termination of lease; but for this rule to apply, annexation must be such that fixtures would have become part of real property if they had been installed permanently by owner of fee.

"2. Where advertising sign was permanently and firmly annexed to roof and walls of condemned building and was not removable without causing some injury to freehold but had not lost its identity by becoming structural part of building, tenant under lease for use of roof space for sign was entitled to separate award for value of sign."

While not agreeing that New York State law is necessarily controlling in these instances, the court did carefully review these cases cited, and noted two important distinctions between them and the instant matter.

In the *Stein Brewery case*, the measure of the damage was the value of the land as enhanced by the affixed signs, as was the case in the *Rochester Poster Advertising Co. case*. The other distinction was set forth in the *City of Buffalo case* where it was held that advertising signs, in order to become fixtures and part of the realty, had to be installed permanently as a part of the freehold.

These situations do not exist in the instant matter. As is stated above, there was no showing that these billboard advertising signs enhance the value of the real property, but, if anything, they were a burden to the land.

Further, there never was any intention on the part of

either party to consider these billboard advertising signs as a permanent accession to the land. In fact, two signs previously erected were removed when a building was demolished. It is clear, as set forth in the lease between the parties, that the intention of the billboard advertising sign company and the intention of the landowner was that these billboards always remain the personal property of the company. The billboard advertising sign company had the right to remove them, and had done so in the past, and could do so whenever in its opinion the location lost its value for advertising purposes or the signs became obscured.

How then, can the billboard advertising sign company now claim that these signs are permanent parts of the realty thus entitling them to a share in the appropriation award? Obviously, it cannot.

Therefore, it is the finding of this court that:

1. Metromedia is not entitled to compensation for the value of its leasehold interest for the reason that the lease required the billboard advertising sign company to pay a higher rental than was the fair market rental of the property, and hence, the leasehold was a detriment rather than an asset to the company.

2. Metromedia is not entitled to compensation for the replacement cost of its lease for the reason that replacement cost is not an element of damages in an appropriation case.

3. Metromedia is not entitled to compensation for the fair market value of its billboard advertising signs for the reason that such signs are personal property and are not compensable items in an appopriation case.

We do find, however, that Metromedia is entitled to a refund of 8-26/31 times the monthly rental of $33.33 paid in advance because of the termination of the lease as of August 19, 1968, or $292.00.

The referee's decision insofar as it conforms to the decision herein, is confirmed, and insofar as it differs is reversed.

*Judgment accordingly.*