# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 93-IA-00125-SCT

*THE LAMAR CORPORATION, A LOUISIANA CORPORATION, SUCCESSOR TO LAMAR ADVERTISING OF JACKSON, INC., AND LAMAR OUTDOOR ADVERTISING, INC., LESSEE*

*v.*

*STATE HIGHWAY COMMISSION OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/29/93 |
| TRIAL JUDGE: | HON. HOUSTON JAMES PATTON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEY FOR APPELLANT: | MARK D. HERBERT |
| ATTORNEYS FOR APPELLEE: | JAMES T. METZ |
| | JOHN H. PRICE, JR. |
| | BARRY S. ZIRULNIK |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | REVERSED AND REMANDED - 6/6/96 |
| MOTION FOR REHEARING FILED: | 7/10/96 |
| MANDATE ISSUED: | 9/26/96 |

## EN BANC.

### BANKS, JUSTICE, FOR THE COURT:

¶1. Here we are called upon to address the interplay between a statute providing for relocation expenses and that calling for compensation for structures on real property acquired by the state where the owner of the structure has the right of removal but cannot remove the structure without destroying it. We conclude that the structure owner is entitled to compensation for the value of the structure. Accordingly, we reverse.

### I.

¶2. This appeal arises from the January 29, 1993, Order of the Special Court of Eminent Domain, First Judicial District, Hinds County, Mississippi, which granted the State Highway Commission of Mississippi's ("Commission") motion for partial summary judgment. In that Order, the trial court judge held that an outdoor advertising structure, owned by Appellants, Lamar Outdoor Advertising, Inc., et al. ("Lamar"), was, as a matter of law, personal property and not subject to compensation in eminent domain proceedings

instituted by the Commission for the condemnation of the real property upon which the outdoor advertising structure was situated.

¶3. Upon the trial court's grant of partial summary judgment, Lamar sought this Court's permission to file an interlocutory appeal as to the issue of whether Lamar was due compensation for its sign. This Court granted Lamar's request for an interlocutory appeal and thereafter, Lamar filed its Notice of Appeal. In its brief, Lamar assigned the following as error:

> **A. THE TRIAL COURT ERRED IN GRANTING THE COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT BECAUSE THERE WERE DISPUTED ISSUES OF MATERIAL FACT**

> **B. THE TRIAL COURT ERRED IN FAILING TO FIND THAT, AS A MATTER OF LAW, THE SIGN STRUCTURE WAS PART OF LAMAR'S INTEREST WHICH WAS TAKEN AND FOR WHICH JUST COMPENSATION WAS DUE**

## II.

¶4. The property which is the subject of this dispute is an outdoor advertising sign, a billboard, that was located on the east side of Interstate 55 South, Hinds County, approximately 0.2 miles north of the Byram exit. Because of a highway widening project of a segment of the interstate in the vicinity, the Commission condemned the real property upon which the billboard was erected, and required removal of the billboard.

¶5. The billboard was constructed by employees of Lamar Outdoor Advertising, Inc., in April, 1976, and is described as:

> ... 7 steel beams embedded 6 to 8 feet into the ground. Each steel beam was surrounded in the ground with 18 inches of concrete. Welded to the beams were 4 cross members made of 2' x 3' x 1/4 angle iron which supported the apron and other appertances [sic] to the sign face. The actual sign face consisted of 24 changeable 2' x 14' panels.

¶6. Lamar also owned, as Lessee, a leasehold interest in the parcel of real estate which was condemned by the Commission and upon which the billboard was erected. The property had been leased for a total of seventeen years as an outdoor advertising site. The last written lease was dated April 2, 1982, with Lamar as the Lessee, and Curran's Land Management as the Lessor. The lease was for a three-year primary term, and it provided for continuous automatic renewal of successive three-year terms. At the time of the condemnation proceedings, Lamar was in the first year of its third successive renewal term. Lamar's last lease period had been automatically renewed, and the lease was in effect as of June 5, 1991, the date that the Commission filed its petition in eminent domain. According to the affidavits of Marty Elrod, General Manager of Lamar, and H. J. Curran, proprietor of Curran's Land Management, both intended to continue the lease arrangement indefinitely.

¶7. Initially, in its "Fair Market Value Offer," on August 6, 1990, the Commission offered Lamar $18,150, less $850 after taking value, for net compensation totaling $17,300. That offer was based upon the Commission's original premise that the billboard constituted real property. The Commission subsequently rescinded that offer and substituted an offer of $500 for compensation, and $3,900.80 for moving expenses associated with the removal of the sign.

¶8. The Commission took the position that the billboard was "personal property," and therefore, noncompensable in eminent domain proceedings. No compensation was offered for the billboard itself.

¶9. The trial court apparently agreed with the position taken by the Commission. On January 29, 1993, the court entered and order granting partial summary judgment and stating, *inter alia*, that:

> 6. Mississippi law does not recognize compensatory damages for personal property in eminent domain proceedings.

> 7. Based upon the evidence before this Court, including the terms and conditions of the lease pertaining to the billboard at issue, the sworn-to Personal Property Tax Returns made by the Lamar Corporation to the Tax Assessor for Hinds County, Mississippi, and Mississippi jurisprudence setting forth the test to be applied in determining the status of property as personalty or realty, the Court finds that there is no genuine material question of fact but that The Lamar Corporation's billboard at issue constitutes a trade fixture and personal property as a matter of law.

> . . . .

> . . . [T]he billboard at issue is, as a matter of law, personal property and not subject to compensation in eminent domain proceedings.

## III.

¶10. Today's appeal involves the narrow consideration of the propriety of the trial judge's grant of partial summary judgment regarding the classification of the billboard and its compensability. The summary judgment standard has been articulated as follows:

> M.R.C.P. 56(c) allows summary judgment where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. When reviewing a decision to grant summary judgment, this Court will conduct a *de novo* review. *Daniels v. GNB, Inc.*, 629 So. 2d 595, 599 (Miss. 1993); *Short v. Columbus Rubber & Gasket Co.*, 535 So. 2d 61, 63 (Miss. 1988). Evidentiary matters are viewed in a light most favorable to the non-moving party. *Morgan v. City of Ruleville*, 627 So. 2d 275, 277 (Miss. 1993); *Palmer v. Biloxi Regional Medical Center, Inc.*, 564 So. 2d 1346, 1354 (Miss. 1990).

*Crain v. Cleveland Lodge 1532*, 641 So. 2d 1186, 1188 (Miss. 1994).

## IV.

¶11. There is little doubt as to the legal status of this billboard as between lessor and lessee. It is a trade fixture. We need not be detained, however, by the consideration whether it is therefore "personal" as opposed to "real" property. We resolve this matter as one of elementary statutory construction. This issue may be decided by referring to the clear language of the statutes involved. Any structure which is adversely affected by an acquisition "shall be acquired" and is compensable "notwithstanding the right or obligation of the tenant, . . . to remove such" structure or improvement. Miss. Code Ann. § 43-37-11 (1972). The sign is clearly a structure under any ordinary meaning of that term. The conclusion that § 43-37-11 compels compensation for the structure here in question, is not at odds with the right of one displaced to receive relocation expenses. Miss. Code Ann. § 43-39-7(1)(b) (1972). Both of these sections deal with the

acquisition of real property. A natural construction is that § 43-39-7(1)(b) is confined to situations where the "personal property" is not also a structure which cannot be moved without destruction.

¶12. Moreover, the property here involved does not become "personal property" within the meaning of the relocation section simply because it may be classified as a "trade fixture" and therefore treated as personal property for ownership purposes as between lessor and lessee. Clearly, the "notwithstanding" clause quoted above from § 43-37-11 contemplates "trade fixtures" as well as other structures in which the lessee retains ownership because of a contractual or other legal provision.

¶13. The sign is merely an improvement which the tenant, Lamar, has a right "as against the owner of the any other interest in the real property, to remove." Miss. Code Ann. § 43-37-11(2) (1972). By the explicit provision of the statute, that right of removal does not deprive it of the right to have the property "acquired" when it would be adversely affected by the acquisition of the land.

¶14. Accordingly, we reverse the judgment of the circuit court and remand this matter to that court for further proceedings.

¶15. **REVERSED AND REMANDED.**

**LEE, C.J., McRAE, ROBERTS AND MILLS, JJ., CONCUR. PRATHER, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND PITTMAN, J. SMITH, J., NOT PARTICIPATING.**


**PRATHER, PRESIDING JUSTICE, DISSENTING:**


¶16. Respectfully, I dissent from the majority opinion for the reason that the opinion fails to answer the threshold question of whether Lamar's billboard, appropriated along with the real property taken in the eminent domain action by the Highway Commission, was compensable as personal property or real property. In my view, the Special Court of Eminent Domain correctly held that Lamar's outdoor advertising structure was, as a matter of law, personal property and not subject to compensation in eminent domain proceeding for the condemnation of the real property upon which the outdoor advertising structure was situated. [1]

¶17. The determination of the character of a billboard as real or personal property is necessary to determine the amount of compensation due to the owner of the billboard. Without this initial determination by this Court, a remand for further proceedings is without direction from this Court.

**I.**

¶18. Since a taking of property by eminent domain traditionally does not include personal property lying on the real property but not affixed to it, the resolution of the threshold question depends upon the status of the billboard as personalty, or as part of the realty, whether a fixture, a structure or an improvement. If the billboard constituted a fixture or structure, then compensation for a taking by eminent domain is clearly required by Mississippi statutes and case law. On the other hand, if the billboard's status was that of

personalty, compensation may not be due Lamar, but relocation costs.

¶19. Although Mississippi has not addressed this question, other jurisdictions have held both ways, finding a billboard or analogous structures as either compensable structures or non-compensable personal property. Many of those cases were cited extensively within the briefs of both parties. As stated in a recognized authoritative treatise:

> Courts have differed in their opinions of the nature of the property interest held by owners of outdoor advertising structures. Some courts have held that these structures are personalty, while others have held that they are fixtures or structures.

**Searles,** *8A Nichols, The Law of Eminent Domain*, ¶ 23.01 n.1 (1994).

¶20. However, because of the diversity of holdings in other jurisdictions, the analysis herein is confined primarily to Mississippi statutory law, and/or law from other jurisdictions which have "squarely confronted" this issue.

¶21. In the case at bar, the highway construction that resulted in today's appeal was funded in large part by federal funds. The State's use of federal highway funds brings this action under the ambit of the Uniform Relocation Assistance and Real Property Acquisition Policies Act ("URA"). Congress enacted URA in 1970 and had a twofold purpose in doing so:

> First, the purpose of the relocation assistance provisions was to establish a uniform policy for treatment of individuals displaced as the result of federal or federally funded assisted projects. See URA § 201 (42 U.S.C. § 4621). <u>Second, Congress intended the real property acquisition policies sections to bring about uniform nationwide procedures for the taking of property by the federal government or state agencies receiving federal assistance.</u>

*Whitman v. State Highway Commission of Missouri*, 400 F. Supp. 1050, 1056 (W.D. Mo. 1975) (emphasis added).

¶22. After the United States Congress enacted URA, Mississippi followed suit in 1972. House Bill No. 788, passed during the 1972 legislative session, provides:

> AN ACT to encourage and expedite the acquisition of real property by state agencies for use in any project or program in which federal funds are used and to comply with the "Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970," Pub.L. 91-646, Title III, Section 305, 84 Stat. 1906, 42 U.S.C.A. Section 4655; and for related purposes.

House Bill No. 790 provides:

> AN ACT to provide for relocation assistance to persons displaced by the acquisition of real property by state and local land acquisition programs and to comply with the "Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970," Pub.L. 91-646, Title II, Sections 207 and 210, 84 Stat. 1898 and 1899, 42 U.S.C.A. Sections 4627 and 4630; and for related purposes.

¶23. Upon passage, House Bill No. 788 and 790 became Miss. Code Ann. §§ 43-37-1 to -13 and 43-39-1 to -27, respectively. Chapter 37 concerns the compensation to be paid upon acquisition of real

property, while Chapter 39 deals with relocation payments. Both chapters' purposes are set forth below:

> The provisions of this chapter [37] shall be applicable only to the acquisition of real property under the laws of this state for use in any project or program in which federal funds are used. (emphasis added).

Miss. Code Ann. § 43-37-1 (1972).

> [T]o establish a uniform policy for the fair and equitable treatment of persons displaced by the acquisition of real property by state and local land acquisition programs which are federally funded in whole or in part.

Miss. Code Ann. § 43-39-3 (1993).

¶24. Chapter 37 incorporates the definitions listed in Chapter 39 which means that any interpretation given to Chapter 37 must take into account the meanings of Chapter 39. Lamar falls under § 43-39-5(d) which states:

> "Business" means any lawful activity, excepting farming operation, conducted primarily:

> \*\*\*

> (4)For the purposes of subsection (1) of Section 43-39-7, for assisting in the purchase, sale, resale, manufacture, processing, or marketing of products, commodities, personal property, or services by the erection and maintenance of an outdoor advertising display or displays, whether or not such displays are located on the premises on which any of the above activities are conducted.

Miss. Code Ann. § 43-39-5(d)(1993).

¶25. The statute that requires relocation costs to be paid, states, *inter alia*, that:

> (1) If a displacing agency acquires real property for public use, it shall make fair and reasonable relocation payments to displaced persons and businesses as required by this chapter for:

> . . . .

> (b) Actual direct losses of tangible personal property as a result of moving or discontinuing a business . . . but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the agency . . . .

Miss. Code Ann. § 43-39-7 (1972).

¶26. Alternatively, pertinent provisions of Chapter 37 include:

> (1) Where any interest in real property is acquired, an equal interest in all buildings, structures or other improvements located upon the real property so acquired and which are required to be removed from such real property or which are determined to be adversely affected by the use to which such real property will be put shall be acquired.

> (2) For the purpose of determining the just compensation to be paid for any building, structure or

other improvement required to be acquired as above set forth, such building, structure or other improvement shall be deemed to be a part of the real property to be acquired notwithstanding the right or obligation of a tenant, as against the owner of any other interest in the real property, to remove such building or improvement at the expiration of his term. The fair market value which such building, structure or improvement contributes to the fair market value of the real property to be acquired, or the fair market value of such building structure or improvement for removal from the real property, whichever is the greater, shall be paid to the tenant thereof.

(3) . . . Nothing with regard to the above-mentioned acquisition of buildings, structures or other improvements shall be construed to deprive the tenant of any rights to reject payment and obtain payment for such property interests in accordance with the laws of the state.

Miss. Code Ann. § 43-37-11 (1972).

¶27. Therefore, according to the immediately preceding quoted language, if the advertising billboard constituted a "structure" that was required to be removed, then the Commission was required to acquire an interest in the billboard equal to that which it acquired in the underlying real property.

¶28. To apply the appropriate statute, this Court must answer the threshold question of whether the billboard in this case constitutes a "structure" pursuant to Miss. Code Ann.§ 43-37-1 to -13., or whether it constitutes personal property pursuant to Miss. Code Ann.§ 43-39-1 to -27. If the billboard in question is considered a "structure," then the provisions of Chapter 37 are appropriate, and compensation for the taking of Lamar's billboard due. Alternatively, if the billboard is deemed to constitute personal property, Lamar is entitled to relocation costs provided by Chapter 39.

¶29. While Lamar submitted an affidavit that the billboard's condition prevented it from being relocated, this fact alone is not controlling in classifying whether the billboard was realty or personalty. This Court is mindful of Lamar's actions which exemplified that it classified the billboard as personalty: tax information and the contract with Curran's. In reviewing both chapters, Chapter 39 speaks directly to Lamar and its operations. It directs that the applicable statute for reimbursement for Lamar's sign would be § 43-39-7, which provides for "actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the agency." Miss. Code Ann. § 43-39-7(1993).

¶30. As related in *Nichols*, *supra*, "[c]ourts have differed in their views on whether outdoor advertising fixtures are personalty, not compensable in an eminent domain proceeding, or permanent affixations to the land, which are compensable." **Searles, *8A Nichols, The Law of Eminent Domain***, ¶ 23.02[2] (1994) (footnotes omitted). According to *Nichols*, courts have held that outdoor advertising fixtures are permanent affixations to the land, which are compensable, in the following:

> *City of Buffalo v. Michael*, 16 N.Y.2d 88, 262 N.Y.S.2d 441, 209 N.E.2d 776 (1965); *Whitmier & Ferris Co. v. State of New York*, 12 A.D. 165, 209 N.Y.S.2d 247 (4th Dept. 1961) ; *Rochester Poster Advertising Co. v. State*, 27 Misc. 2d 99, 213 N.Y.S.2d 812 (Ct. Cl. 1961), *aff'd*, 11 N.Y.2d 1036, 230 N.Y.S.2d 30, 183 N.E.2d 911 (1962).

**Searles**, *8A Nichols, The Law of Eminent Domain*, ¶ 23.02[2] n. 9 (1994). However, on the other

hand, *Nichols* states the following regarding outdoor advertising structures as personal property:

> For example, Ohio courts have held advertising structures to be personal property, and not fixtures capable of being appropriated in condemnation proceedings. *See City of Cleveland v. Zimmerman*, 22 Ohio Misc. 19, 51 Ohio Ops. 2d 50, 253 N.E. 2d 327 (Prob. Ct. 1969); *Lakewood v. Rogolsky*, 22 Ohio Misc. 93, 50 Ohio Ops. 2d 423, 252 N.E. 2d 872 (Prob. Ct. 1969).

¶31. Although there is a division of authority among the states as to whether outdoor advertising is characterized as real or personal property, recent decisions deem such signs personal property. *State of Tennessee v. Teasley,* 913 S.W. 2d 175 (Tenn.Ct.App. 1995); *State of New Hampshire v. 3M National Advertising,* 653 A.2d 1092 (N.H. 1995) (signs determined personal property rather than real property; valuation determined for leasehold interest compensated for the signs per recognition of the applicability of § 4652); *In re Acquisition of Billboard Leases and Easements, City of Northshore, et al. v. OCI Corp. of Michigan, et al.,* 517 N.W.2d 872 (Mich. 1994)(billboard itself is trade fixture and personal property; leasehold was real property).

¶32. In the Tennessee case, the pivotal question was the same: For the purpose of fixing compensation in condemnation cases, are outdoor advertising billboards, attached to the land, real or personal property? *State of Tennessee v. Teasley*. The Tennessee appeals court answered the question as personal property. *Teasley*. In *Teasley,* the defendant, Eagle Advertising, Inc., asked for relocation expenses of the billboard, compensation for the value of the sign, and the value of the leasehold. *Id.* The defendant reasoned that their billboard was a fixture and should be considered part of real property for valuation purposes. *Id.* The Tennessee court did not agree with this argument.

¶33. In *Teasley,* the Court reasoned that a billboard should be, in a practical sense, a trade fixture. Generally, whatever is affixed to the land becomes part of the realty. *Simmons v. Bank of Miss.,* 593 So. 2d 40, 42 (Miss. 1992). An exception has evolved through the years for fixtures placed on land for the purposes of trade or manufacture and not intended to become part of the realty. *Simmons,* 593 So. 2d at 42 (citing *Anderson-Tulley Co. v. U.S.,* 189 F.2d 192 (5th Cir. 1951)). Trade fixtures by their very definition are personal property used by a tenant in his business. Whether a fixture was meant to be a part of the land or removable primarily depends on the intent of the parties. *Bondafoam, Inc. v. Cook Construction Co., Inc.,* 529 So. 2d 655, 658 (Miss. 1988). When a fixture is determined to be a trade fixture, and hence, personal property, then compensation under the statute is reimbursement for the leasehold interest and relocation expenses.

¶34. The affidavits that were submitted to the trial court also stated that the parties' lease was intended to be renewed. Obviously, the best indicator of the parties' intentions is the language of the contract. Lamar's lease with Curran's Land Management provided for removal of the sign at Lamar's election:

> **All structures,** materials and equipment placed upon said premises by Lessee **shall always** remain Lessee's property and may be removed by Lessee at **any** time up to a reasonable time after the termination of this lease.

(Emphasis supplied).

¶35. By contract, removal was always an option for Lamar. Therefore, it necessarily follows that the

billboard was acknowledged by the landlord and tenant to be personal, not real property. That is, the billboard was not affixed to the land such that it became a part of the realty. A lessor, like Curran, and a lessee, like Lamar, "may agree among themselves regarding title to and removal of improvements and may reflect their wishes in formal agreements this Court will enforce." *See, eg. Bondafoam,* 529 So. 2d at 658. The parties in this case contracted for freedom to remove the sign, which precludes compensation under § 43-37-11.

## II.

## CONCLUSION

¶36. The trial judge correctly found that, as a matter of law, the billboard in this case was personal property. Lamar is entitled to "actual direct losses of tangible personal property ... not to exceed an amount equal to the reasonable expenses that would have been required to relocate the [billboard]." *See* Miss. Code Ann. § 43-39-7(b)(1993). The judgment of the Special Court of Eminent Domain granting partial summary judgment on this issue should be affirmed.

¶37. I respectfully dissent.

**SULLIVAN, P.J., AND PITTMAN, J., JOIN THIS OPINION.**


1. Lamar's interest in the leasehold interest, which is real property, is not involved in this appeal.