OPINION
{¶ 1} This accelerated calendar appeal arises from the Trumbull County Court of Common Pleas. The city of Warren ("the city"), appeals a date of take determination by the trial court in an appropriation case.
 {¶ 2} Defendant-appellee, Gary E. McQuaid ("McQuaid"), acquired ownership of the real property at issue, located at 860 Parkman Road, N.W. in Warren, Ohio, in 1983. In February 1995, Warren City Council and the Mayor of Warren adopted Warren City Ordinance No. 10767/95, providing for the appropriation in fee simple, title and interest in a portion of the McQuaid parcel, known as parcel "16 WD," and providing a temporary easement on and to a portion of the parcel known as "16 T." The land was being appropriated for street-widening purposes.
 {¶ 3} A dispute arose between the city and McQuaid as to the date of take. The city filed a motion for pretrial determination with the trial court on October 2, 1998, asking the court to determine and set the date of take for appropriation purposes prior to the jury trial.
 {¶ 4} A hearing was held on the motion on October 30, 1998. Both parties stipulated that on April 8, 1992, two eight thousand gallon underground gasoline storage tanks and one six thousand gallon underground gasoline storage tank were removed by McQuaid from the real estate and that McQuaid also had a gasoline pump island removed on that same date. The parties also stipulated that McQuaid had a new pump island, a new ten thousand gallon underground gasoline storage tank, and a new eight thousand gallon underground gasoline storage tank installed on the premises.
 {¶ 5} Both parties also stipulated that the contractors, on behalf of the city of Warren and/or state of Ohio first entered onto the property to begin actual construction on September 2, 1997.
 {¶ 6} At the hearing, McQuaid testified that, on several occasions prior to April 8, 1992, representatives from the city and/or state of Ohio indicated to him that a portion of his parcel was being appropriated and that underground gasoline tanks and a pump island would have to be removed and he would be compensated therefor.
 {¶ 7} Specifically, McQuaid testified that in 1988 or 1989, Larry Simms, a surveyor for the city, surveyed his entire real estate and informed McQuaid that the city was going to widen the street and that the street would go directly through one of the existing gasoline pump islands.
 {¶ 8} McQuaid also testified that in July or August 1991, a person driving a yellow truck with a green emblem on it came on his property and, when approached by McQuaid, explained that the state was going to widen the road and that the new right-of-way line would take over the entire pump island.
 {¶ 9} In September or October of 1991, another yellow truck with a green emblem on it came onto the property, and the driver handed McQuaid a card with a Ravenna office number on it, which was circled. The individual then began spray painting a yellow line approximately three and a half to four feet in length through the center of the pump island. The individual then told McQuaid that the pump island would have to be removed and that he would be compensated for it. McQuaid testified that he asked when the widening would occur and the individual directed him to call the number on the card for more information.
 {¶ 10} McQuaid then testified that in February or March 1992, a surveyor from the engineering firm of Lynn, Kittinger Noble came onto the real estate. McQuaid called the engineering firm's office at that time and asked for more information about the road-widening. He testified that approximately one-half hour later an individual arrived and gave him a highway blueprint plan. The individual then spray painted another line directly over where the previous line had worn off.
 {¶ 11} The city testified that no one had authorization to acquire any right or interest in the parcel prior to July 1994 and, moreover, McQuaid never attempted to confirm or verify the information he received regarding the appropriation and need for removal of storage tanks before having the tanks removed.
 {¶ 12} Both parties subsequently submitted proposed findings of facts and conclusions of law. The trial court issued a judgment entry on October 14, 1999, discussing both factual and legal determinations made by the court and ultimately holding that the proper of date of take for the appropriation was April 8, 1992. The city filed a request for separate findings of fact and conclusions of law, and also filed a motion for relief from judgment, and a request that the trial court designate the October 14, 1999 judgment entry as a final appealable order, pursuant to Civ.R. 54(B).
 {¶ 13} An amended judgment entry was entered on December 11, 2001. The court set forth specific findings of fact and conclusions of law and designated the judgment as a final appealable order in favor of McQuaid, maintaining its holding that the date of take was April 8, 1992.
 {¶ 14} The city filed this timely appeal, citing three assignments of error:
 {¶ 15} "[1.] The trial court erred in finding and concluding that the `date of take' in this case is April 8, 1992 based upon notions of quasi-contract, unjust enrichment and quantum meruit, as such is contrary to law."
 {¶ 16} "[2.] The trial court erred in finding and concluding that the `date of take' in this case is April 8, 1992, instead of September 2, 1997 (the date the contractor(s) on behalf of the city of Warren first took actual physical possession of the appropriated property), as such finding and conclusion are against the manifest weight of the evidence, are not supported by sufficient evidence, and are contrary to law."
 {¶ 17} "[3.] The trial court erred in finding that the three underground storage tanks removed by the property owner himself on April 8, 1992 existed at that time within the parcel appropriated (i.e. parcel "16 WD"), and then concluding therefrom that the `date of take' for purposes of this case is April 8, 1992, as such finding and conclusion are against the manifest weight of the evidence, are not supported by sufficient evidence, and are contrary to law."
 {¶ 18} In its first assignment of error, the city contends that the trial court erred in determining that the date of take was April 8, 1992, when that determination was based upon equitable notions of quasi-contract, unjust enrichment and quantum meruit which are contrary to law.
 {¶ 19} It is longstanding law in Ohio that "the `date of take' on which the value of property appropriated for public use is determined is the earlier of either the date of trial or the date of actual physical appropriation."[1] However, in Evans, the Supreme Court of Ohio has noted an exception to this general rule, holding:
 {¶ 20} "[T]he court may establish an earlier date of take if depreciation is caused by actions or inactions of the appropriating authority. The burden of proof necessarily lies with the property owner to show causation."[2]
 {¶ 21} Another exception to the general rule states, "`the time as of which the evaluation of the property should be made must comport with the peculiar facts and circumstances of the case so as to assure the owner of the property compensation in money which is just as contemplated by the Constitution of Ohio.'"[3]
 {¶ 22} In the instant case, in the amended judgment entry, the trial court issued the following findings of fact:
 {¶ 23} "7. McQuaid presented credible testimony demonstrating that, on several occasions prior to April 8, 1992, he was provided with information by representatives of the City and/or the State of Ohio indicating that removal of the tanks and pump island would be necessary for the road-widening project, and that he would be compensated therefor. More specifically, McQuaid testified as to discussions he had with city and state representatives, as well as a representative of the state's design engineer, between period from 1988 or 1989 to February or March 1992. In each of these discussions, McQuaid was given information as to the location of the proposed new right-of-way line which information clearly indicated that removal of the tanks and pump island would be necessary.
 {¶ 24} "8. McQuaid's testimony in this regard established that his actions in having the tanks and pump island removed were based upon, and precipitated by, the information he had received from representatives of the City and/or the State, and that but for such representations, he would not have had the tanks and pump island removed."
 {¶ 25} The trial court then cited Carcione and concluded that:
 {¶ 26} "4. The Court concludes that Plaintiff has met his burden of proving that the present case involves unusual facts and circumstances which justify a departure from the general rule as to the setting of the `date of take.'"
 {¶ 27} The court also concluded:
 {¶ 28} "5. [T]he Court has found that McQuaid removed the tanks and pump island for no other reason but that he had been informed on multiple occasions by governmental representatives that a taking of his property was impending, and that this taking would inevitably require the removal of the tanks and pump island for which he would be compensated. Having been induced to act by such representations, it would be wholly unreasonable and unjust to then deprive McQuaid of the compensation to which he clearly would have been entitled had he simply left the tanks and pump island where they were."
 {¶ 29} Although McQuaid argues in his brief that the trial court did not rely on the equity principles of quasi-contract, unjust enrichment or quantum meruit in determining the date of take, a review of the record and the judgment entry reveals that the trial court based its determination as to the date of take on McQuaid's reliance on representations made by the individuals who appeared on his property periodically prior to the commencement of the appropriation action. Thus, the trial court relies on underlying theories of equity in determining the date of take.
 {¶ 30} Moreover, the trial court relied on the language from Carcione and determined that this case involves "unusual facts and circumstances which justify a departure from the general rule as to the setting of the `date of take.'"
 {¶ 31} It is well-settled law in Ohio that there can be no recovery against a municipality based on theories of quasi-contract, unjust enrichment or quantum meruit.[4] Thus, the date of take cannot be established as April 8, 1992, the date the storage tanks and pump island were removed, based on the representations made to McQuaid by any of the individuals who arrived on his property. Making such a finding would ultimately hold the city liable based on equitable theories alone without the commencement of any appropriation action.
 {¶ 32} In order for the city to commence the appropriation of private lands for public use, city council must formally pass and adopt a resolution seeking such appropriation which must then be adopted by the mayor.[5] Any activity prior to such formal appropriation such as the drawing of preliminary blueprints or visits to the proposed appropriation site do not constitute a formal appropriation action upon which a property owner can rely.[6] Although McQuaid received a copy of a preliminary blueprint which detailed the street-widening project and statements were made to McQuaid regarding the street-widening and its effect on his property, no formal appropriation action was taken until December 14, 1994, when the Warren City Council passed its resolution authorizing the appropriation. Without such formal authorization to proceed with appropriation by both the city council and the mayor, the city cannot be held liable for any actions taken by the property owner between the preliminary stages and actual authorization.
 {¶ 33} Moreover, we disagree with the trial court that this case involves "unusual facts and circumstances" which justify setting the date of take on April 8, 1992. McQuaid's testimony reveals that individuals periodically entered onto his land in order to survey or otherwise make an actual physical assessment of the property contemplated for appropriation. Although statements were made to McQuaid regarding the proposed appropriation, we find that activity to be common, rather than unusual. Holding the city liable for compensating McQuaid for tank and pump island removal when such was done based solely on informal conversations demeans the nature of the appropriation process. Surely preliminary surveys and physical assessments can be obtained by a governmental entity prior to appropriation without being construed as commencement of an appropriation action.
 {¶ 34} Moreover, McQuaid conceded that he made no attempt to contact any governmental official or agency to receive confirmation for any compensation prior to undertaking the extensive project of removing three large underground storage tanks and a pump island.
 {¶ 35} We find that the trial court erred in concluding that the date of take was April 8, 1992. Therefore, the city's first assignment of error is with merit.
 {¶ 36} In its second assignment of error, the city argues that the trial court erred in concluding the date of take was April 8, 1992, rather than September 2, 1997, the date the contractors, employed by the city, took actual physical possession of the property. As we have determined in our analysis of appellant's first assignment of error that the trial court erred in determining the date of take to be April 8, 1992, we must now determine the appropriate date of take.
 {¶ 37} As noted above, the general rule requires that the date of take be established as the earlier of either the date of trial in the appropriation action or the date upon which the appropriating agency took actual physical possession of the property.[7] Thus, the date of take must be either the date the appropriating agency takes physical possession of the land or the day the trial commences to assess the compensation due the property owner.
 {¶ 38} In the case sub judice, the earlier date was when the contractors, on behalf of the city of Warren, the appropriating agency, entered onto the property. Thus, the proper date of take for appropriation purposes was September 2, 1997.
 {¶ 39} Therefore, the city's second assignment of error is with merit.
 {¶ 40} The city's third assignment of error relates to the location of the underground storage tanks. The city contends that there was insufficient evidence to conclude that all three storage tanks were located within the portion of the parcel to be appropriated. However, as we have concluded that the proper date of take was September 2, 1997, the issue of the underground storage tanks and their location becomes moot as they had already been removed.
 {¶ 41} The city's third assignment of error is without merit.
 {¶ 42} The judgment of the trial court is reversed, and it is the judgment of this court that the date of take for appropriation purposes is September 2, 1997.
JUDITH A. CHRISTLEY and DIANE V. GRENDELL, JJ., concur.
[1] Evans v. Hope (1984), 12 Ohio St.3d 119, 120 citing Dir. ofHighways v. Olrich (1966), 5 Ohio St.2d 70; In re Appropriation forHighway Purposes (1958), 167 Ohio St. 463.
[2] Id., citing Bekos v. Masheter (1968), 15 Ohio St.2d 15.
[3] In re Appropriation for Hwy. Purposes (1967), 12 Ohio App.2d 169,171-172, quoting City of Cleveland v. Carcione (1963), 118 Ohio App. 525,532.
[4] See Eastlake v. Davis (1952), 94 Ohio App. 71; Seven Hills v.Cleveland (1988), 47 Ohio App.3d 159; Montz Sales Service, Inc. v.Barberton (1983), 10 Ohio App.3d 157.
[5] R.C. 163.01 et. seq.
[6] Cleveland Bakers Union Local No. 19 Pension Fund v. Ohio Dept. ofAdmin. Serv. (1981), 3 Ohio App.3d 57.
[7] Evans, at 120.